Denio, Ch. J.
 

 The principal question in this case was the same with that decided by this court in
 
 Hickok
 
 v.
 
 The
 
 
 *153
 

 Trustees of the Village of Plattsburgh (June Term,
 
 1856),
 
 *
 
 That question was whether the trustees of a village, in
 
 *154
 
 respect to their functions as commissioners of highways, are to be regarded as the agents of the corporation in such a
 
 *155
 
 sense as to make the latter responsible for their acts or omissions, according to the law of master and servant. I thought
 
 *156
 
 they were rather to be regarded as public officers, and that the community which they, in some sense, represented,
 
 *157
 
 whether a village or a town, was not responsible under the doctrine referred to. The decision of the court was that, in
 
 *158
 
 the case of a village where the trustees were made commissioners of highways, the corporation was liable for their
 
 *159
 
 negligence. Tbs village" of Ithaca, in the particular case under consideration, was organized precisely like the village
 
 *160
 
 of Plattsburgh, and I think it impossible to mention any difference between the two cases which will be favorable
 
 *161
 
 to the defendants. There is this distinction. In the case of
 
 Plattsburgh,
 
 the trustees neglected to fill up the ditch
 
 *162
 
 which a wrong-doer had excavated in the street. It was held to be a corporate duty to keep the street-in a safe con
 
 *163
 
 dition. In this case the trustees huilt a bridge, which they had a right to do; but in doing it they proceeded negli
 
 *164
 
 gently and unskillfully, and
 
 the
 
 plaintiff suffered an injury on that account. Considering the building of the bridge a
 
 *165
 
 corporate act, performed by its agents and servants, the defendants are responsible upon settled principles, illustrated by several adjudged cases.
 
 (Furze
 
 v.
 
 The Mayor of New-York,
 
 3
 
 Hill,
 
 612;
 
 Rochester White Lead Company
 
 v.
 
 The City of Rochester,
 
 3
 
 Comst.,
 
 464;
 
 Hutson
 
 v.
 
 The Mayor, &c., of New-York,
 
 5
 
 Seld.,
 
 163.) I think, therefore, that no error was committed as to the main question.
 

 I have looked into the other exceptions, and think that the judge decided correctly on each occasion where an exception was taken to his ruling: First. Several witnesses were allowed to give their opinions as to the manner in which the bridge ought to have been built. But they were persons skilled in the business of bridge building, or having scientific knowledge on that subject, and the plaintiff was entitled to give their opinions in evidence. Second. It was claimed that the plaintiff was concluded on account of what McCormick, his grantor, had said about the manner in which the bridge ought to be made. Upon this point the judge charged that if he concurred in making the bridge as it was built the plaintiff could not recover, but that if he only insisted upon his rights in respect to a certain flume, that would not hinder the plaintiff from recovery, unless yielding what he claimed would prevent the defendants from making a safe and proper bridge. This direction seems to me entirely right. Third. It was claimed that the plaintiff’s shop, which was injured, was set in the bed
 
 *166
 
 ef the stream where it had no right to be. The judge charged that if this were so, it would be fatal to the action; but this would not be so if the place where the shop was put had become dry land by the gradual change of the channel. This was quite correct. Fourth. There was a pretence that the plaintiff had not done all he reasonably could to get his property out of the way when the flood came. The judge said that there was no evidence of such neglect on his part, and I cannot find any in the case.
 

 The judgment of the Supreme Court ought to be affirmed,
 

 All the judges concurring,
 

 Judgment affirmed.
 

 *
 

 Upon the consultation which resulted in the decision of
 
 Exckok
 
 v.
 
 The 1’rustces of the Village of Plattsburgh
 
 by this court, Seldbn, J., read an opinion which had been delivered by him, while upon the bench of the Supreme Court, in the case of
 
 West
 
 v.
 
 The Trustees of the Village of Brock-port,
 
 and is hereto appended. That opinion was adopted as a correct exposition of tlie principles governing in actions of this character, and thereupon the judgment of the Supreme Court in
 
 PLickok
 
 v.
 
 The Trustees of the Village of Plattsburgh,
 
 refusing a new trial to the plaintiff, who had been nonsuited at the circuit, was reversed, all the judges concurring, except Denio, Ch. J.
 

 It is to be noted that the negligence in the
 
 Plattsburgh case,
 
 to which the opinion of Selden, J., was applied by this court, consisted in mere omission; while the
 
 Brockport case,
 
 as will appear from the following statement, was that of the negligent execution of a duty, resulting in the creation of a public nuisance:
 

 SUPREME COURT.
 

 Weet
 

 v.
 

 The Trustees of the Village of Brock-port.
 

 Motion at special term for a new trial upon bill of exceptions. The complaint in this case alleges that the defendants are a coiporation; that on or about the 17th of May, 1853,, they undertook to construct a platform, to connect the southeast corner of the canal bridge with the sidewalk, upon the east side of Main-street, in said village, such platform constituting an extension of the sidewalk in a lateral direction so as to unite with the
 
 bridge;
 
 that this platform was partially planked on the said seventeenth of May, but that, on the evening of that day, through the carelessness and negligence of the defendants, an uncovered space was left therein, about twelve feet in length and five in breadth, opening into a hole or pit beneath, five feet deep; that no guards of any kind were placed around this chasm, nor any light to enable passers-by to see it; that the plaintiff was at Brockport that evening, with a canal boat, of which he was master, and that, about ten o’clock, while crossing the bridge on his way to the collector’s office, his path to which lay directly over this platform, he was precipitated through the opening into the pit beneath, breaking several of his ribs and otherwise injuring him.
 

 The answer contains a denial of each and every allegation of the complaint.
 

 Upon the trial, it was proved by Thomas Cornes that he was president of the board of trustees in 1853; that, prior to the seventeenth of May, in that year, divers citizens of Brockport had called his attention to the condition of the place in question, and had applied to him to have it repaired; that, at a meet
 
 *154
 
 ing of the trustees on the ninth of May, the subject of making the necessary repair or improvement was discussed and the propriety of making it was admitted, but no resolution or ordinance to that effect was passed, nor any direction then given to the street commissioner on the subject; that it was the practice of the board, when they met, to talk over the subject of repairs, and then direct the street commissioner, who was usually present, to do the work, without passing any formal resolution or ordinance for the purpose; that it was sometimes referred to one trustee and sometimes to another to look after the work, and when the bills came in, if they were just and right, they were audited and paid; that sometimes the street commissioner made repairs without directions from any one, and his bills for the work were afterwards audited and paid; that he, Comes, directed the street commissioner to make the improvement in question; that, on the night of the seventeenth of May, the hole described in the complaint was left open, without any light or guards of any kind to prevent travelers from falling into it; that the street commissioner afterwards presented his bill for making and superintending the improvement, which was audited and paid, and that a resolution directing such payment was duly passed and entered in the records of the village.
 

 It also appeared that the defendants had, at the time, ample funds to make and complete the improvement in question; and evidence was given tending to show its propriety and necessity.
 

 The plaintiff further proved the occurrence of the accident, as described in the complaint, and the consequent injury to his person.
 

 Upon this state of facts, the defendants moved for a nonsuit, which was granted, upon the ground, as stated in the bill, that no action could be maintained against the corporation; but that it must be brought against the trus. tees individually, as commissioners of highways.
 

 The plaintiff now moved to set aside this nonsuit, and for a new trial.
 

 Lewis II. Mor gam,,
 
 for the plaintiff.
 

 A. J. WiBcin,
 
 for the defendants.
 

 Seldbn, J. Several cases have recently arisen in this state in which the subject of the liability of municipal corporations for damages arising from the negligence or malfeasance of their officers has been judicially examined. In
 
 The Mayor, $e., of New-Yorh
 
 v.
 
 Furze
 
 (8
 
 Hill,
 
 612), the city of New-York was held liable, in a civil suit, for the omission to keep in repair certain sewers constructed by the corporation. The principle of this case has been referred to and adopted in several subsequent cases, and may now be considered as established.
 

 
 *155
 
 Bnt, in order properly to apply this principle, it is necessary to observe some distinctions not noticed in that case, the decision in which is rested mainly upon the case of
 
 Henley
 
 v.
 
 The Mayor and Burgesses of Lyme Regis
 
 (5
 
 Bing.,
 
 91; 3
 
 Barn, $ Adolph.,
 
 77; 1
 
 Bing. N. O.,
 
 222;
 
 S. O. in error).
 
 That was an action brought against the borough of Lyme, to recover for the damages done to the plaintiff’s house by the sea, in consequence of the neglect of the borough to repair certain sea-banks and mounds. The case was carried through all the English courts, and finally decided by the House of Lords, where Park, J., in giving the opinion of the court, lays down the broad proposition that “
 
 wherever
 
 an indictment lies for
 
 non-rejpair,
 
 an action on the case will lie at the suit of a party sustaining any peculiar damage.” This expression, which is cited and relied upon by Nelson:, Oh. J., in the case of
 
 The Mayor, $c.,
 
 v.
 
 Furze,
 
 is calculated, when separated from the case in which it is used, to convey an entirely erroneous impression as to the principle upon which the decision in that case really rests. It would seem to inculcate the doctrine that the remedy, by an action on the case, is coextensive with that by indictment, in all cases of a neglect of public duty; and tends, therefore, to support the position, which I deem untenable, that all public officers are liable to an action, at the suit of every individual who has sustained injury through their omission to perform a duty imposed by law. If this position is sound, it is, of course, decisive of the question, frequently discussed but not yet decided, whether town commissioners of highways in this state are liable, in a civil action, to every person who has sustained injury in consequence of their neglect to keep the highways and bridges of their towns in repair, as their liability to indictment is beyond dispute.
 

 The principle which really lies at the basis of the case of
 
 Henley
 
 v.
 
 Mayor, §e., of Lyme
 
 Regis, and of the series of English cases upon the authority of which that case was decided, is this: That whenever an individual or a corporation, for a consideration received from the sovereign power, has become bound by covenant or agreement, either express or implied, to do certain things, such individual or corporation is liable, in case of neglect to perform rach covenant, not only to a public prosecution by indictment, but to a private tction at the suit of any person injured by such neglect. In all such cases, che contract made with the sovereign power is deemed to enure to the benefit of every individual interested in its performance.
 

 That this is the true doctrine on the subject, may, I think, be conclusively shown by a brief review of a few of the cases cited and relied upon in the case of
 
 Henley
 
 v.
 
 Lyme Regis,
 
 of which the following comprise all that appear to be worthy of notice here, viz.:
 

 First.
 
 Yielding
 
 v.
 
 Fay (Oro. Eliz.,
 
 569): This was an action on the case,, brought against the defendant, as parson of the parish of Quarleys, in South
 
 *156
 
 hampden, to recover damages for his omission to keep a bull and a boar, alleging that he was bound by custom to keep those animals for the use of the jiarishioners. The court held that it was a good and reasonable custom, and that every inhabitant prejudiced by the omission might maintain an action. From the report of this case, in Crokb, it is difficult to understand the nature and source of the obligation upon which the action was founded. But the matter is explained by Baron Comyn, in his
 
 Digest,
 
 title “Action on the Case for Negligence,” A. 3. He there says, in speaking of this case, that the action does not lie “ unless the plaintiff show a
 
 prescription,
 
 for it, and a
 
 consideration
 
 for such prescription; as that the parson had an increase in his tithes,” &c., and refers to
 
 Waples
 
 v.
 
 Bassett
 
 (4
 
 Mod.,
 
 241), in support of the assertion. This clears up the difficulty. It shows that the action is brought to enforce an obligation, voluntarily assumed by contract, for a consideration. Every prescription presupposes a contract, by which the right was originally obtained or the obligation assumed. This case, therefore, goes to support the doctrine which I have advanced.
 

 Second.
 
 Payne
 
 v.
 
 Patridge (Oa/rthew,
 
 191;
 
 8. O.,
 
 1 Shower, 255): This was an action on the case, brought by an inhabitant of the ville of Littleport, in the Isle of Ely, against the defendant, for not keeping a ferry-boat, for crossing the Wilney river from one side of said ville to the other, in which ii was alleged that the defendant was bound by prescription to keep such ferryboat, and that all the inhabitants of the ville were, by custom, entitled to pass and repass, toll free. Upon demurrer, it was held that the prescription and the custom were good, and well pleaded; but judgment was given for the defendant upon the ground that the declaration showed no damage to the plaintiff, except such as was common to all the king’s subjects. From the report of this case in Carthew it is not easy to discover the views of' the court, in regard to the obligation to keep and maintain the ferry-boat. The chief justice is there made, in speaking of the custom to pass toll free, set up in the declaration, to say: “Also, this custom did not consist in compelling the defendant to keep a ferry-boat,
 
 because he is obliged to do it without any custom, of the mile."
 
 The ground of the obligation is not here stated, but the report of the same case in Shower explains this. Lord Holt there says: “ If a ferry were granted at this day,
 
 he that accepts such grant
 
 is bound to keep a boat for the public good;” and again, “He that has a new ferry by grant,
 
 when he accepts of it,
 
 charges himself with the repairs and keeping it;” the plain meaning of which is that, upon every grant of a ferry, there is an ’’implied undertaking on the part of the grantee, in consideration of the franchise received, to keep and maintain a ferry-boat for the accommodation ef the public. '
 

 
 *157
 
 Third.
 
 The Mayor of Lynn
 
 v.
 
 Turner
 
 (
 
 Oowp.,
 
 86): Turner brought an action on the case against the corporation of Lynn for not repairing and cleansing a certain creek, alleging special damages to himself. It was argved that it was incumbent on the plaintiff to show some special reason or tenure whereby the corporation was bound to repair; that they were not bound of common right. Judgment was given for the plaintiff, and Lord Mansfiele said: “ It i| here alleged that the corporation have, from time immemorial, been used to repair. It states, therefore, that they are bound by prescription, and it might be
 
 the very condition and terms of their creatúm or cha/rter
 
 thus putting the obligation exclusively upon the ground of a contract, to be inferred from the immemorial custom.
 

 These are the principal cases, referred to in the case of
 
 Henley
 
 v.
 
 The Mayor, 4'c., of Lyme Regis,
 
 which go to sustain the right of an individual to recover, in a private action, for an omission to perform a public duty; and it will be seen that the action in each case was founded upon prescription, that is, upon a contract and consideration proved by the immemorial custom. No infe-| rence, therefore, can be drawn, from this class of cases, in favor of the position/ that for the neglect of a public duty, not imposed by contract and for the| nerformance of which no consideration has been received, an action will lie at j the suit of a private individual. !
 

 Upon the argument of
 
 Henley
 
 v.
 
 Lyme Regis,
 
 in the House of Lords, the counsel of the plaintiff contended “ that every
 
 breach of public
 
 duty, or neglect of what the party is bound to perform, working wrong or loss to another, is injurious and actionable,” and cited
 
 Button
 
 v.
 
 Johnstone
 
 (1
 
 Term R.,
 
 784), and
 
 Russell
 
 v.
 
 The Men of Levon
 
 (2
 
 Term R.,
 
 661) in support of the position. But the decision of the court was put exclusively upon the ground of
 
 %
 
 contract on the part of the defendant, founded upon a sufficient consideraion, as is apparent from the following extract from the only opinion delivered n the House of Lords. Pabk, J., after quoting the language of the charter, ■ays: “Now, these words are undoubtedly an
 
 expression of the icing’s will
 
 iat the corporation shall repair, but they are not the less a consideration on % iat account; on the contrary, they show the
 
 consideration
 
 for the grant, the motives inducing the king to make the grant, and consequently dhe
 
 terms and renditions
 
 on which the grant was to be accepted.”
 

 Saving thus shown that this class of English cases proceeds upon the ground of an obligation, assumed by contract, for a consideration, I turn to the consideration of the question whether town commissioners of highways in this state are liable to a civil suit for the neglect of their duty to keep the highways and bridges of their towns in repair, a question which it is necessary to settle before we can ascertain the ground of the liability of the defendants in this case, if they are liable at all.
 

 
 *158
 
 In the case of
 
 Sutton
 
 v.
 
 Johnstone
 
 (1 Wero -B., 784), Baron Eyre, in the course of his opinion in the Court of Exchequer, lays down the proposition, “that
 
 every breach of a public duty,
 
 working wrong or loss to another, is an injury and actionable.” It was this remark of Baron Eyre upon which, the counsel for the plaintiff, in the case of
 
 Mayor,
 
 j-c.,
 
 of Lyme Regis,
 
 relied, when he cited the case of
 
 Sutton
 
 v.
 
 Johnstone
 
 in the House of Lords. That case was this: The defendant, being commander of a squadron of vessels of war, of one of which the plaintiff was captain, had charged the latter with disobedience of orders and other military offences, and caused him to be arrested and brought to trial before a court-martial, where he was acquitted. The plaintiff brought an action for a malicious prosecution, and added a count or counts for unreasonably delaying the calling of the court-martial, the plaintiff being in custody meanwhile. The remark quoted above was made in reference to the latter cause of action, and in reply
 
 to
 
 the argument that the matter complained of was
 
 damnum absque injuria.
 
 If that remark be true, it would of course follow that all public officers, including commissioners of highways, are liable, for any neglect of duty, not only to a public prosecution, but also to a civil action, at the suit of any party injured. Can this position be maintained? It was neither affirmed or disaffirmed, upon the subsequent argument of the same case, before the chief justices of the King’s Bench and Common Pleas, who decided for the defendant upon other grounds.
 

 Those who contend for the broad general rule laid down by Baron Eyre,,; rely for authority mainly upon the class of cases above reviewed, and also) upon that familiar class in which sheriffs, clerks, constables, etc., have been j held responsible to the party injured for any neglect of duty. But the latter! class, at least, affords no foundation for the rule. There is an obvious distino! ti on between sheriffs, clerks and other ministerial officers concerned in the civil administration of justice, who perform services for particular persons for a specific compensation, and the class of officers to which commissioners of highways belong. The latter receive no compensation from private persons, and owe, therefore, no duty to individuals; while the former may be regarded in a measure as the mere agents of the persons for whom they act.
 

 This question was long since found to be one of great difficulty, as is apparent from the case of
 
 Lane
 
 v.
 
 Cotton
 
 (1
 
 Ld. Raym.,
 
 646), which was several times argued by eminent counsel before it was decided. The action was against the postmaster-general, to recover the value of certain exchange bills purloined from a letter which, had been delivered to a clerk in the London post-office to be transported to Worcester. It was finally decided in favor of the defendant by three of the justices, Lord Holt dissenting. One objection taken to the maintenance of the action, by Gould, J., was, that there was no contract on the part of the defendant, either express or implied; another wa»,
 
 *159
 
 that the post-office “was a matter founded in government;”
 
 i. e.,
 
 that the postmaster-general was a public officer, and that his duty and responsibility was to the public alone; a third was, that he received, no premium or compensation for his services from the plaintiff.
 

 The same question was again presented in the case of
 
 Whitfield
 
 v.
 
 Lord Le Despencer (Cowp.,
 
 754), and here again the case was twice argued before the court gave judgment, which was pronounced by lord Mansfield, and fully sustained the decision in
 
 Lane
 
 v.
 
 Cotton.
 
 Now, although the negligence fon which these actions were brought was that of a subordinate, still, the reasoning of the judges tends to show that a public officer, who receives no compensation from and owes no duty to any private individual, is accountable to the public alone for his negligence. An analogous doctrine may be found asserted in
 
 Brookes’ Abridgment,
 
 title “Action on the Case,” where it was said, upon the authority of the
 
 Tear Boohs,
 
 that if a highway be out of repair, so that a / horse was mired and injured, “ no action lies by the owner against him who i ought to repair it, for it is a public matter and ought to be reformed by pre- | ¿entmont.”
 

 This was held to be good law in
 
 Russell
 
 v.
 
 The Men of Devon
 
 ( 2
 
 Term R.,
 
 $08), where Ashiirst, J., after stating another reason why the action could not be maintained, adds: “ But I think the case cited from
 
 Brookes’ Abridgment,
 
 title “Action on the Case” (sitpro), is a direct authority to show that no such action could be maintained; and
 
 the reason of that case is a good one,
 
 namely, because the action must be brought by the public.”
 

 In the State of South Carolina, the precise question which we are considering arose and was passed upon in the case of
 
 Young v. Commissioners of Roads
 
 (2
 
 Natt $ McCord,
 
 537). That was an action on the case, brought against the commissioners of roads of the Edgfield district, for an injury to the plaintiff’s horse and wagon from the insufficiency of a bridge, which, it was alleged, they were bound to keep in repair. The plaintiff obtained a judgment, and, upon granting a new trial, Huger, J., said: “ When an officer has been appointed to act, not for the public in general, but for individuals in particular, and from each individual receives an equivalent for the services rendered him, he may be responsible, in a private action, for a neglect of duty; but when the officer acts for the public in general, the appropriate remedy for his neglect of duty is a
 
 public prosecution.”
 

 The same question has come up incidentally and received a passing remark from the courts, upon several occasions, in this state, but does not appear to have been deliberately considered until the recent case of
 
 Hutson
 
 v.
 
 The City of New-Tork
 
 (5
 
 Sandf. 8. C. R.,
 
 289). In that case, the late Judge Sand-ford discusses the point in an opinion which, in this respect, appears to be just and discriminating, and in which, as I understand the case, all his asso«
 
 *160
 
 dates, so far as this point is concerned, concurred; although they differed with him upon other parts of the case. His reasoning is substantially the same as that of the court in South Carolina
 
 {supra).
 
 He says: “It seems to us the true distinction is that we have mentioned: when the duty is to individuals specially, for a reward emanating from them, a civil action may be brought for neglect, whether of themselves or of their subordinates; but when it is a duty to the
 
 pubKc generally,
 
 undertaken alike for all citizens, the remedy is
 
 by indictment only,
 
 together with removal from office when prescribed by law.”
 

 We see, then, from the two classes of cases to which I have referred, that there is an important distinction between the obligations assumed by private individuals, for a consideration received from the government or sovereign power of the state, and those assumed by public officers; although the latter may also receive, by way of salary or otherwise, a reward for their services. Both may be regarded as impliedly undertaking to perform their respective duties; but the contract of the officer, except in the case of sheriffs, clerks, &c., who receive a compensation from private parties, is treated as made with the government alone, while that of the individual is deemed to be made with and to enure to the benefit of every person interested in its performance. The reason for the distinction appears to be that intimated by Gould, J., in the case of i
 
 Lane
 
 v.
 
 Colton
 
 (
 
 Supra
 
 ), viz., that the duties in the one case are imposed upon | the officer for public purposes only, while in the other they are voluntarily assumed, with a view to private advantage. The cases which have been cited! show that, in respect to this distinction, corporations have been placed upon, the same footing as private individuals.
 

 The only reported case which I have been able to find, either in this state or in England, which directly conflicts with this view, is that of
 
 Adsit
 
 v.
 
 Brady
 
 Í 4
 
 Hill,
 
 630). The decision in that case is based entirely upon the rule laid down by Judge Bronson in the first sentence of his opinion. He says: “ When an individual sustains an injury by the misfeasance or nonfeasance of a pubic officer, who
 
 acts, or omits to act,
 
 contrary to his duty, the law gives redress to the injured party by an action adapted to the nature of the case.”
 

 If my previous reasoning is correct, this rule, as here stated, is too broad. It fails to distinguish between a mere neglect of duty, and an affirmative act by which some injury is done; and it makes no distinction between officers who owe a duty to individuals from whom they receive a compensation for the performance of some specific service, and those whose obligations are to the public alone; a distinction which seems to me to rest upon a solid foundation of reason.
 

 Judge Sandford, in speaking of this case in
 
 Hutson
 
 v.
 
 The City of New York (supra
 
 ), says: “ The liability was taken for granted, by the distinguished
 
 *161
 
 judge who delivered the opinion of the court, without discussion or reference to authority, and yet, so far as we know, there is no reported adjudication, either in this state or in England, which sustains a private action in such a case; and with much deference we submit that a decision, making such a great stride in asserting the liability of public officers, is not entitled to the full weight of authority, when it appears not to have been made upon grave argument and mature consideration.” This commentary of the learned judge of the Superior Court, which I think not unwarranted, appears to have commanded the concurrence of his associates, however they may have differed with him upon other grounds.
 

 notwithstanding the case of
 
 Adsit
 
 v.
 
 Brady,
 
 therefore, I venture to assume that town commissioners of highways are not liable to a civil action for a mere omission to keep the highways of their towns in repair. It was necessary, to settle this question, to enable us to see with clearness on what ground it is that the defendants are liable in this suit, if liable at all. The nonsuit was granted, as it would seem, at the trial, upon the authority of the case of
 
 Hickoh
 
 v.
 
 The Trustees of Plattsburgh
 
 (15
 
 Barb. S. C. M.,
 
 427), in which it was held that the duty of keeping the highways and streets of the village in repair did not rest, under the village charter, upon the corporation, but upon the trustees individually, in their capacity of commissioners of highways.
 

 The fourteenth section of the charter of Plattsburgh
 
 (Laws of
 
 1831, 381) provides that the village shall be a road district, and shall be exempt from the superintendence of the commissioners of highways of the town of Plattsburgh, and that
 
 “
 
 the trustees of said village
 
 shall be commissioners of highways,
 
 and shall have the same powers, and be charged with the same duties over the roads of the said village, as commissioners of highways have or possess,” &c. The powers conferred by this section were held by the court, in
 
 Hiclcoh
 
 v.
 
 The Trustees of Plattsburgh,
 
 to he vested in the trustees, not in their corporate but in their individual capacity, from which it necessarily followed that if the action would lie at all, it must be brought against the individual trustees as commissioners of highways.
 

 The distinction taken in this case is new, and does not appear to have occurred either to the court or the counsel in the case of
 
 Hutson
 
 v.
 
 The City of New
 
 -
 
 Torlc (5 Sandf. S. C. JS.,
 
 289), although the mayor and common council of that city are made commissioners of highways in substantially the same manner as the trustees of Plattsburgh.
 

 But admitting it to be sound, does it apply to the present case 7 By the charter of the village of Brockport, the trustees are not made commissioners of highways; but the nineteenth section of their charter
 
 {Laws of
 
 1852, 672), after enacting that the village shall be a road district separate from the town of Sweden, provides that the trustees of the village
 
 “
 
 shall have the same
 
 *162
 
 power over the said road district, and shall discharge all the duties which hy law are given to or enjoined upon commissioners of highways.” Here the trustees are not invested with an office distinct from that of trustees of the village, as they are in the case of the village of Plattsburgh, but the powers of commissioners of highways are referred to simply as a measure of what is thereby superadded to their other powers as village trustees. They are authorized by a provision
 
 {%
 
 10) “ to open, improve, ornament, construct and
 
 repair streets, alleys and sidewalks,
 
 or provide for its being done by and at the expense of owners or occupants of lots adjoining; to build and repair reservoirs, aqueducts, drains and sewers, and
 
 to make any necessary repairs or improvements
 
 for the benefit and use of said village.”
 

 It would be difficult to discriminate between the powers conferred by these two sections in respect to the nature of the liabilities and obligations thereby imposed. In many instances, it would be entirely impracticable to determine under which of these sections, if either, as distinct from the other, they had acted, or were bound to act, conferring, as they undoubtedly do in many respects, coordinate powers. It is plain, therefore, that the trustees must be held, in the exercise of their power, to the same responsibility, under whichever of these two sections those powers may be derived.
 

 I apprehend that there can be no doubt that the powers embraced in the nineteenth section are given to the trustees in their corporate capacity, and that the duties which result therefrom devolve upon the corporation. In all charters creating corporations, powers conferred upon those who stand in place of and represent the corporate body are deemed to be conferred upon the corporation itself. The cases which prove this are innumerable, and I shall assume
 
 it
 
 without further argument. The defendants, therefore, are to be treated as invested in their corporate capacity with all the powers of commissioners of highways over the roads and streets of their village, in addition to the ample powers conferred by section ten of their charter. What, in view of this, are their responsibilities
 
 1
 
 We have seen that town commissioners are not liable to a civil action for a mere neglect of their duty to keep the highways of their towns in repair. Is, then, a municipal corporation, possessing similar powers, liable in damages for such neglect 1
 

 It seems to have been the opinion of Justice Beardsley, in the case of
 
 Wilner
 
 v.
 
 The Mayor, S;c., of New-York
 
 (1
 
 Henio,
 
 595), and óf Sandford, J., in
 
 Hutson
 
 v.
 
 The Same {supra),
 
 that municipal corporations are not liable in a civil suit for a mere neglect of their duty to repair highways; that they are subject to no greater responsibility, in this respect, than commissioners of highways in towns. But it has been shown that where individuals or corporations assume obligations or duties for a consideration, received from the public, they are liable for a neglect of those duties to any private citizen who
 
 *163
 
 may have been injured by such neglect. This doctrine was applied, in the cases of
 
 Mayor of Lynn
 
 v.
 
 Turner
 
 and
 
 Henley
 
 v.
 
 The Mayor, ¿¡c., of Lyme Regis,
 
 to municipal corporations.
 

 It may, no doubt, be said that, in the last of these cases certainly, and probably in the first, the charters not only vested in the corporations certain governmental powers and privileges, but conveyed to them valuable rights of property, and that it was solely in view of the latter that these public corporate bodies were placed upon a footing with private corporations and individuals; that charters to municipal corporations are usually granted from motives of public policy, and with a view to the better government of the districts which they embrace, and not for the purpose of conferring any private benefit upon the individuals composing the corporation; and that being, thus, mere measures of governmental polity, imposed upon the people of the district for governmental purposes, they cannot justly be considered as affording any consideration for an implied contract on the part of the corporation to perform its corporate duties.
 

 But it is well known that such charters are never imposed upon municipal bodies, except at their urgent request. While they may be governmental measures in theory, they are, in fact, regarded as privileges of great value, ^ and the franchises they confer are usually sought for with much earnestness before they are granted. The surrender by the government to the municipality of a portion of its sovereign power, if accepted by the latter, may with propriety be considered as affording ample consideration for an implied undertaking, on the part of the corporation, to perform with fidelity the duties which the charter imposes.
 

 Upon investigation it will be found that, from the earliest period of the common law, all grantees of franchises, whether individuals or corporations, have been held by a uniform and unbroken series of decisions to the strictest performance of every condition of the grant, either express or implied. Thus, the grantee of a ferry is held bound to keep and maintain a suitable boat, and the grantee of a right to erect a bridge or construct a turnpike road and take toll, to keep such bridge or road in repair, whether bound by the terms of their charter or not. It makes no difference in such cases whether the grantee of the franchise be an individual or corporation.
 

 I see no reason for exempting municipal corporations from the operation of this principle. Their liability, in such cases, has been frequently asserted by judges, as in
 
 The People
 
 v.
 
 The Corporation of Albany
 
 (11
 
 Wend.,
 
 689), where Nelson, J., says: “ Where
 
 corporations
 
 or individuals are bound to repair a highway, they .are liable to indictment in behalf of the public,
 
 and to an action on the case
 
 in behalf of an individual who has sustained a particular injury.” So, also, in the case of
 
 The Ma/yor, §c.,
 
 v.
 
 Furze
 
 (3
 
 Hill,
 
 
 *164
 
 812 ). This latter case illustrates another distinction which is directly applicable to the case under consideration. The decision therein is not put exclusively upon the ground of the liability of the corporation for a mere nonfeasance. The facts of the ease show that the corporation had created a nuisance. They constructed the sewers, the obstruction of which produced the overflow upon the plaintiff’s premises. The injury was produced as much by their positive act as by their neglect. Under such circumstances, a corporation, whatever may be its nature, is liable to the same extent and upon the same principles as an individual would be for a similar injury.
 

 The subsequent cases of
 
 The Rochester White Lead Compaivy
 
 v.
 
 The City of Rochester
 
 (3
 
 Gomst.,
 
 463) and
 
 Lloyd
 
 v.
 
 The Mayor, S,c., of the City of New-Yorh
 
 (1
 
 Seld,,
 
 369) belong to the same class. In the first of these cases, the injury would not have occurred if the corporation had not caused the culvert to be made; nor in the second, if they had not procured the hole to be dug. In each case, the corporation would have escaped all liability if due care and skill had been observed in the performance of the work,
 

 Whatever may be the obligations of a corporation in other respects, there can be no doubt that, whenever it assumes to exercise its corporate powers, it is bound to see that dve care and caution are used to avoid injury to individuals. It can, of course, be no excuse for the corporation, any more than it would be for an individual, that the work was done and the want of care shown by an employee or servant whom they had set at work.
 

 That the cases of which I am here speaking constitute a different class from those in which corpors“Hons or others áre held liable for the mere nonperformance of a public duty, may be made plain by taking the case of
 
 The Rochester White Lead Company
 
 v.
 
 The City of Rochester
 
 as an example. It is clear that no indictment would have Iain in that case. There was no proof of injury to the public or of neglect of-public duty. It .was a case of mere private nuisance, and there was no necessity for invoking any other principle to support the recovery, except the obvious one that a corporation is no more exempt from liability, in case it creates a nuisance, either public or private, than an individual.
 

 The present ease, as I think, falls withilx the same category. It seems to me to need very little argument to prove that a platform built during the day upon a public thoroughfare in a populous village, left at night with a hole or chasm, of the depth of five feet, wholly uncovered, directly in the line of travel, without either a light by which it can be seen or anything to warn a traveler of the danger, is a public nuisance, and that those who ct used it should be held'responsible for the consequences of its production.
 

 It follows, from the preceding reasoning, that, if we regard the the plaintiff as the result of mere neglect to keep the highwsyv
 
 of
 
 too "ft
 
 *165
 
 repair, the defendants would be responsible in this action for such neglect, upon the ground that their acceptance of the franchise granted hy their charter raised an implied undertaking or contract on their part to perform that duty, which, upon the principles referred to, enures to the benefit of every individual interested in such performance. But it is unnecessary to revert to this doctrine to establish the responsibility of the defendants in this cause, for the reason that the injury to the plaintiff was not the result of a mere nonfeasance on the part of the defendants, hut was produced hy their construction of the platform in question in such a manner as to constitute it a public nuisance.
 

 The nonsuit must he set aa'de and a now trial ordered, with costs to abide the result