## BARTON *vs.* THE CITY OF SYRACUSE.

Although no action will lie, against a municipal corporation, for a refusal or omission of the common council to construct a sewer, yet, the corporation having made any of the improvements, or undertaken any of the public works, authorized by the charter, the duty is imperative to construct them in a proper manner, and keep them in proper repair.

The act of construction, and the duty of keeping in repair after the same are complete, are ministerial in their nature; and for any neglect or omission of the duty an action lies, at the suit of any party specially injured.

Where the charter of a city, in the section conferring authority to make and repair streets, sewers, &c., in terms declares it to be the " duty of the mayor

Barton *v.* City of Syracuse.

and common council" to do the acts mentioned, when they shall deem them proper, and they have adjudged a sewer to be proper and necessary, and have at the expense of the property benefited, caused it to be built as a "local improvement," and paid for by a "local assessment," in pursuance of their charter, the duty of keeping it in repair is one of public concern, relating to the public welfare, and is to be regarded as imperative and peremptory. The corporation cannot negligently omit, or arbitrarily refuse, to exercise the power vested in it, to keep the sewer in repair.

Sewers are not the exclusive property of the city, nor to be used only for the carrying off the water from the street. They are constructed not necessarily as a part of or incidental to a street, or under the street-making power.

Sewers are constructed mainly in reference to a more thorough drainage than can be obtained in any other way, not only of the streets, but of the adjoining lots, and with a view to health, as well as the more convenient enjoyment of the premises drained. And if the public cannot use them for the purpose of drainage, they will not accomplish the end for which they were designed.

There is something very like a contract to be implied from the construction of a sewer at the expense of the adjacent property, that it may be used to drain the property thus charged with its construction.

A city ordinance, providing that each and every person who shall dig in any street, for any purpose, either to connect with a sewer, or water or gas pipes, shall first serve a notice in writing on the clerk of the city, that the clerk may keep a register of the same, implies the right of property holders to connect their drains with the common sewers.

The act of connection is not prohibited, and is not therefore classed among the acts which, being prohibited and therefore unlawful, cannot give or lay the foundation of an action in behalf of the wrongdoer.

A property owner, in connecting his drain with a public sewer, is not bound to guard against the negligence of the city corporation, and its want of care in preserving the sewer in repair. As he cannot foresee the negligence of the corporation, he is not called upon to guard against it. He is at liberty to assume that the sewer will be kept in repair.

The negligence of the city corporation, in such a case, does not depend upon notice to them that the sewer is out of repair.

If an obstruction in a sewer is the necessary and ordinary result of the flow of water and filth into the sewer and an omission to guard against or remove it, this is in itself negligent. It is a neglect of duty not to ascertain that the sewer has become obstructed; and if, in consequence of such obstruction, water is set back, through the under drain of an individual, into his cellar, the city is liable to him for the damages. MORGAN, J. dissented.

THE plaintiff brought his action to recover damages to property stored in his cellar, caused by the flow of water

thrown from the common sewer of the city, through the drain of the plaintiff. The store and premises of the plaintiff were on the south side of Genesee street, and in 1851 the common council of the city of Syracuse caused a sewer to be con structed through that street, on the south side thereof, con necting with sewers passing through other streets and emptying into Onondaga creek. The property benefited by the sewer, including the plaintiff's lot and premises, were assessed for the construction thereof. In 1859 the plaintiff constructed a drain from his cellar to the sewer in Genesee street, about sixty-five feet in length, with a fall of $\frac{2}{10}$ of a foot, and emptying into the sewer about four inches above the bottom thereof. The grade of the sewer was three-fourths of an inch to the rod, and the fall in the drain and sewer were all that could be had. The sewer was of suffi-cient capacity, if kept clean, to answer all the purposes of a sewer, and carry off all the water if kept free from mud and other deposits. In 1860 the sewer had not been cleaned, and there was a large accumulation of mud and filth, diminishing very greatly its capacity; and on May 9th of that year, in a very heavy rain, the sewer became and was unable to dis-charge the water that fell into it and should have been dis-charged through it, and it set back through the drain of the plaintiff, into his cellar, damaging his property stored there, to a large amount, for which the referee to whom the cause was referred gave judgment for the plaintiff. The defendant appealed from the judgment.

*W. H. Shankland,* for the appellant.

*Daniel Pratt,* for the respondent.

ALLEN, J. By § 97, title 4 of the charter of the defend-ant, it is made the duty of the mayor and common council, and they have the power, to lay out, make, open, regulate, repair and improve highways, streets, lanes, alleys, sewers,

gutters, &c., and alter, widen, straighten and discontinue the same when they shall deem proper, subject to the provisions of law and the charter. It is discretionary with the common council whether they will undertake any of the improvements referred to, and no action will lie against the city for a refusal or omission of the common council to construct a sewer. (*Wilson* v. *The Mayor of New York*, 1 *Denio*, 595.) But having made any of the improvements, or undertaken any of the public works authorized by the charter, the duty is imperative to construct them in a proper manner, and keep them in proper repair. The acts of the corporation are only discretionary to the extent of determining whether the particular work shall be undertaken or not. The act of construction and the duty of keeping in repair after the work is complete, are ministerial in their nature ; and for any neglect or omission of duty an action lies, at the suit of any party specially injured. And for neglecting to do what the common good requires, by which a nuisance is permitted or created, an indictment lies. (*The People* v. *Corporation of Albany*, 11 *Wend.* 539.) The charter of the defendant is more than permissive, in the section conferring authority to make and repair streets, sewers, &c., as it in terms declares it to be the " duty of the mayor and common council" to do the acts mentioned, when they shall deem proper. They have adjudged this sewer to be proper and necessary, and have, at the expense of the property benefited, caused it to be built as a " local improvement," and paid for by a " local assessment," in pursuance of § 3 of title 7 of the charter. The duty of keeping it in repair is one of public concern, relating to the public welfare, and is to be regarded as imperative and peremptory. The corporation cannot negligently omit or arbitrarily refuse to exercise the power vested in it to keep the sewer in repair. This was decided in *The Mayor of New York* v. *Furze*, (3 *Hill*, 612,) and the city of New York was held liable to an inhabitant who sustained an injury by reason of the neglect of the agents of the corporation to repair a

sewer constructed by the city; and the principle of the case has been repeatedly reaffirmed, since. In that case the sewer was suffered to remain filled up and obstructed, and by reason of this being out of repair, the water overflowed upon the plaintiff's premises and into his cellar and basement.

A municipal corporation, in the construction of its sewers, drains, &c., as well as in their maintenance and preservation, is bound to exercise that care and prudence which a discreet and cautious individual would use if the whole loss or risk was to be his own. The city of Rochester was held liable in damages occasioned to individual property by the want of capacity of a culvert and the unskillfulness of its construction, by reason of which it failed to discharge the body of water which it was designed to pass, so that the water was set back upon a factory, to its injury. (*Rochester White Lead Co.* v. *Rochester City,* 3 *Comst.* 463. And see *Lloyd* v. *The Mayor &c. of New York,* 1 *Seld.* 369 ; *Conrad* v. *The Trustees of the Village of Ithaca,* 16 *N. Y. Rep.* 158 ; and *Hutson* v. *The Mayor &c. of New York,* 5 *Seld.* 163.) The duty of the city to repair the sewer, as well as its liability to indictment for a neglect of that duty, and to an action at the suit of any one sustaining an injury in consequence of the neglect, are so clearly established and repeatedly reaffirmed in the cases cited, and the principles upon which the cases rest are so well settled, that a further reference to authority, or consideration of the question, cannot be necessary.

The defendants, however, claim that the plaintiff was a wrongdoer in connecting his cellar and premises with the sewer by a drain, and that he is therefore not entitled to recover, in this action. If the position can be maintained that the insertion of the plaintiff's drain was unauthorized and unlawful, it would follow that inasmuch as the overflow from the sewer was through that drain, the plaintiff could not recover for that which was the consequence of his own wrongful act. It is assumed by the counsel for the defendant that the sewer is the exclusive property of the city, designed and in-

Barton *v.* City of Syracuse.

tended to be used only for the carrying off the water from the street, and that which would otherwise pass over the surface and in the gutters. If this be so, the construction of the sewer was a wanton waste of money, and its expense an unnecessary burden upon property. The only inlets or chimneys for the reception of the water from the street are one at or very near each end of the sewer, and within a few feet from the other sewers into which it might have been conducted at a very trifling expense. But sewers are constructed not necessarily as a part of or incidental to a street, or under the street-making power. It is usual, it is true, to construct them in the line of the streets; and this, because it can be done conveniently and upon a line to which the public has access. And it is not an appropriation of the land to a purpose inconsistent with its use as a public highway; and they may be of service in draining the street. (*Kelsey* v. *King*, 32 *Barb*. 410.) But sewers are constructed mainly in reference to a more thorough drainage than can be obtained in any other way, not only of the streets, but of the adjoining lots, and with a view to health, as well as the more convenient enjoyment of the premises drained. In large and populous cities a wise system of sewerage is indispensable to life and health; for in no other way can provision be made for receiving and conducting away the surplus waters and impurities, which, if suffered to remain, would cause disease and pestilence. In no other way than by means of common sewers constructed by the city can cellars and basements be drained and made fit for use. And if the public cannot use them for the purpose of drainage, they will not accomplish the end for which they are designed. An individual, in the heart of a city, cannot drain his premises, and provide for conducting away the waters and impurities that collect, except as he does it through the common sewers. He cannot drain the premises on or through the premises of others, and it is impracticable to allow and would be unreasonable to compel each man to build a separate sewer for himself, in or

under the street.   They are called common sewers, because they are common to all who are so situated as to use them; and the only way they can be used is by inserting a drain from the premises sought to be drained.   Unlike a drain differently constructed, it does not drain or carry off the water from the lands through which it passes, except as it is brought into it by drains falling into it.   If the theory of the defendant's counsel is correct, it is a mistake to suppose that the lots against which a sewer is constructed are benefited by it; for it does not take the water from the lots unless the owners are permitted to drain into it.   But lots adjacent to a common sewer are benefited and rendered more valuable by it; and hence the construction of sewers is classed among local improvements, and assessed upon the property benefited.   (*Charter of City, supra.*)   If made solely with a view to the health of the city, they should be charged upon the city at large; and if made as a part of the street, they should be a charge upon the street fund.   It would be unjust, as well as grossly unreasonable, after having assessed property for the building of a sewer in reference to benefit, to deprive the owner of all benefit and advantage from it, and to drive him elsewhere for his drainage.   There is something very like a contract to be implied from the construction of a sewer at the expense of the adjacent property, that it may be used to drain the property thus charged with its construction.   The ordinance of the city implies the right of property holders to connect their drains with the common sewers.   It (*ch. 9, § 2, of city ordinances,*) provides that each and every person who shall dig in any street, for any purpose, either to connect with a sewer, or water or gas-pipes, shall first serve a notice in writing on the clerk of the city, to the effect that he or she desires to dig in the street, giving the location and name of its owner, that the clerk may keep a register of the same.   A neglect to serve such notice shall subject the person offending to a penealty of not less than two nor more than twenty-five dollars.   The right to make

connection is conceded, and the object of the notice is not to obtain a license or permission from the city authorities, but to enable the city clerk to keep a register of the fact. The want of a notice does not make the digging in the street or the connection with the sewer unlawful, and no penalty is imposed for making the connection, but the penalty is imposed for omitting to give the notice. The right to dig in the street and connect with the sewer exists independent of, and is conceded by, the ordinance, but the notice is made necessary by the ordinance, and a penalty for its omission is imposed. The act of connection is not prohibited, and is not therefore classed among the acts which, being prohibited and therefore unlawful, cannot give or lay the foundation of an action in behalf of the wrongdoer. (*Bosworth* v. *Inhabitants of Swansey,* 10 *Metc.* 363. *Hallett* v. *Novion,* 14 *John.* 273. *Pennington* v. *Townsend,* 7 *Wend.* 276.)

It is also urged that the plaintiff was guilty of negligence in not placing a valve or water trap in his drain, which would have prevented the water from setting back into his cellar. But this, upon the evidence and finding of the referee, was only necessary to guard against the negligence of the defendant and want of care in preserving the same in proper repair. The evidence is, and so the referee finds, that the sewer was sufficient, if kept clean and unobstructed, to carry off the water; and the flooding of the plaintiff's premises was caused by the filling up and obstruction of the sewer. As the plaintiff could not have foreseen the negligence of the defendant, he was not called upon to guard against it. He was at liberty to assume that the sewer would be kept in repair; and if it had been, no damages would have occurred.

In this case the negligence of the defendants did not depend upon notice to them that the sewer was out of repair. The duty of looking after it and keeping it free from obstruction devolved upon them, and not upon strangers. The obstruction was not created by the act of a third person, as in *Griffin* v. *Mayor &c. of New York,* (5 *Seld.* 456,) but was the

necessary and ordinary result of the flow of water and filth into the sewer, and an omission to guard against or remove it was in itself negligent. It was a neglect of duty not to ascertain that the sewer had become obstructed. (*McGinity* v. *Mayor &c. of New York*, 5 *Duer*, 674.) The obstruction was gradual, and the work of years, and if notice were necessary the defendant had ample notice; for the engineer under whose superintendence it was constructed, advised the city authorities that if kept clean it would answer all purposes, but that it would require to be flooded occasionally, to carry off the accumulations of filth and dirt. The admission of evidence of the custom of the inhabitants of the city to connect their drains with the common sewers, could not have affected the result, and therefore, whether strictly admissible to not, is not material.

The judgment should be affirmed.

BACON and MULLIN, Justices, concurred.

MORGAN, J. (dissenting.) It may be conceded, I think, that the city is liable in damages for neglecting to keep the street sewers in repair, when the water is set back so as to *overflow* the adjoining premises. But the right of persons to open a street sewer and connect it with an *under* drain, should have some limitation. The damages here were occasioned by the water forcing its way into the plaintiff's cellar through his under drain. It happened after a severe freshet; and the referee has found that the common council had no notice that the street sewer required reparation. Nor was the plaintiff's drain built with the knowledge or assent of the common council, or with notice to the clerk, as required by the city ordinances. I am not ready, therefore, to admit that the city was under any obligation to the plaintiff to repair the street sewer so as to prevent the water from flowing into his cellar through his own drain. The common council had an undoubted right to regulate the manner in which the con-

nection should be made, and if served with notice, might have required the owner to protect it in some way to avoid the danger. But however this may be, the report of the referee fails to find as a matter of fact that the city was guilty of negligence in omitting to repair the Genesee street sewer, before the injury to the plaintiff's property. I think such a finding absolutely necessary, to sustain a judgment against the city in this case.

Judgment affirmed.

[ONONDAGA GENERAL TERM, October 1, 1861. *Bacon, Allen, Mullin* and *Morgan,* Justices.]