NIMS v. MAYOR, ETC., OF TROY, appellants.

*Municipal corporations — duties of — Negligence — defective sewers — damages.*

The city of Troy had, for a number of years, assumed charge and taken care of a sewer. Under the direction of the city officials, a wall had been built across the sewer, with an opening too small for the discharge of the water flowing through it, in consequence of which debris formed, obstructing the sewer and causing it to overflow into and seriously damage plaintiff's house. *Held,* that the city was under obligation to keep the sewer in repair, which involved a reasonable watchfulness in ascertaining its condition, and, that being omitted, the city was liable for injuries resulting from the omission, and a notice of defect in the sewer was not necessary to fix liability.

At the time of the injury complained of, plaintiff's house was being constructed by contract, and the contract for the mason and carpenter work and material had not been fulfilled. *Held,* that plaintiff might accept the mason and carpenter work as completed, and recover for the damage done to the building. *Held,* also, that plaintiff was entitled to recover for the loss of use and occupation of the premises, while the repairs rendered necessary by the bursting of the sewer were being made. Such damages are not speculative.

APPEAL from a judgment in favor of plaintiff entered upon the report of referee.

The action was brought to recover from the defendants, the mayor, aldermen and commonalty of the city of Troy, damages to the dwelling-house of the plaintiff, Henry B. Nims, caused by the bursting of a sewer, commonly known as the "crooked sewer," in said city, and running through the lot on which plaintiff's house was built. Some thirty years previous to the commencement of the action there was a natural stream of water running from a small pond, situate on a hill east of the settled part of the city, to the Hudson river, which stream drained upwards of 230 acres of land. At that time a sewer was built by a person who then owned plaintiff's lot, through the lot, along a natural ravine, in which the stream then ran, and the ravine was filled up over the sewer to a depth of twenty-five or thirty feet. The stream was likewise covered over by a sewer and the ravine filled up by the owners of the various tracts of land through which it passed, and where such stream crossed several streets in the said city, sewers were built connecting with the various private sewers, making a continuous channel. In 1860 the city constructed a sewer under Federal street, one of the city streets, running nearly parallel to the general direction of "crooked

sewer," and not far from it. " Crooked sewer " was connected with the Federal street sewer by a chute or trunk at a point where the two sewers came within a few feet of each other.

In 1864 one Charles Teson applied to and obtained leave of the common council of the city to enlarge this chute between the sewers, and the same was enlarged. In making such enlargement Teson caused a wall to be built across crooked sewer, leaving only a small aperture through which the water could run. The capacity for the passage of water, of both the chute and the aperture left in the wall, did not equal that of the crooked sewer before said wall was erected. Afterward Teson was paid, under the direction of the common council, for his disbursements in altering the sewers.

In consequence of the change made the water did not pass off as usual from the " crooked sewer," and the sewer became filled with *débris.* In June, 1866, there was an extraordinarily heavy fall of rain, during which the sewer burst upon plaintiff's premises, near a new house in process of erection, which bursting caused the injury complained of in this action.

The referee before whom the action was tried found as conclusion of law that the defendants were chargeable with notice of the obstruction in the sewer, and that plaintiff was entitled to recover $8,360.74 and interest. Other essential facts appear in the opinion.

*R. A. Parmenter,* for appellant. The sewer was partly private and partly public, and the defendants are not liable for injuries arising from defects where it is not a public sewer. *Wilson* v. *Mayor of New York,* 1 Den. 595; *Cole* v. *Trustees of Medina,* 27 Barb. 218; *Kavanagh* v. *City of Brooklyn,* 38 id. 232; *Mills* v. *City of Brooklyn,* 32 N. Y. 489; Dillon on Municip. Corp., §§ 799–802; *Carr* v. *Northern Liberties,* 35 Penn. St. 324; *Child* v. *Boston,* 4 Allen, 41. Defendants are not liable for the wrongful act of Teson. *Requa* v. *City of Rochester,* 45 N. Y. 135; *Griffin* v. *Mayor of New York,* 9 id. 458; 3 Daly, 789; Dillon on Municip. Corp. 789. Also cited, as to the liability of municipal corporations to private action for damages from a defect in public works, *Hickok* v. *Trustees of Plattsburgh,* 16 N. Y. 163; *Barton* v. *City of Syracuse,* 37 Barb. 292; *Shepherd* v. *Inhabitants of Chelsea,* 4 Allen, 113; *Stanton* v. *City of Springfield,* 12 id. 566; *Rowell* v. *City of Lowell,* 7 Gray, 100; *Kidder* v. *Inhabitants of Dunstable,* id. 104; *Smith* v. *City of Lowell,* 6 Allen, 39.

*Esek Cowen,* for respondent.

BOCKES, J. It seems quite satisfactorily established that the municipal authorities of the city of Troy had "crooked sewer" in charge at the time the injury complained of occurred — certainly to the extent of the street crossings — and had controlled its construction and use to that extent for a great number of years prior thereto. The evidence is quite conclusive on this point. The duty of the proper construction of the sewer, and of keeping it in repair at such crossings, was within the scope of the defendant's obligations. Having assumed such duty, and undertaken the public work necessarily attendant upon it, the obligation to construct the sewer at those localities in a proper manner, and to keep it in proper repair, became imperative. The city was, therefore, liable to any persons injured by the wrongful act or culpable neglect of its officers and servants in that regard. *Barton* v. *City of Syracuse,* 37 Barb. 292; affirmed in court of appeals, 36 N. Y. 54; *Rochester White Lead Co.* v. *City of Rochester,* 3 id. 463; *McCarthy* v. *City of Syracuse,* 46 id. 194. And it was held in the cases cited that, in constructing sewers and in keeping them in repair municipal corporations acted ministerially, and were bound to the exercise of needful prudence, watchfulness and care. *Conrad* v. *Trustees of Ithaca,* 16 N. Y. 158; *Mills* v. *City of Brooklyn,* 32 id. 489; *Hicks* v. *Dorn,* 1 Lans. 81–87; *Robinson* v. *Chamberlain,* 34 N. Y. 389. Where there is a duty imposed by law upon the officers of municipal corporations of keeping a structure in repair, it involves the exercise of reasonable watchfulness in ascertaining its condition, and if that be omitted, the corporation is liable for injuries which result from such omission, and no notice of the defect is necessary, in that case, to fix the liability. 46 N. Y. 194; 37 Barb. 292. In this case, the finding of the referee is to the effect that the injury complained of resulted from a positive act, authorized and approved by the officers of the corporation, to wit, the construction of a wall across the sewer having but a small and inadequate opening for the discharge of the water passing through it. The consequence was, as the referee finds, that the sewer became at that point nearly filled with *debris,* which obstructed the free passage of the water and led to the injury. The evidence well sustains this finding of the referee, consequently notice to the city officers is out of the case.

The right of action grew out of a direct wrongful act. By reason of the partial, almost entire, closing up of the sewer, the water was

obstructed in its flow, and kept back beyond the ability of the sewer either to discharge or retain it; and, as a matter of course, it burst its bounds, and, according to the proof, caused great injury to the plaintiff's property. Therefore, unless there is some technical difficulty in the way of the recovery in this case, the judgment should be affirmed.

A very considerable amount of the recovery was for damages done to the plaintiff's dwelling-house, then in process of erection and nearly completed. The structure was let on contract — the carpenter-work to a carpenter and joiner, who was to furnish the materials for his part at the price of $5,178; the masonwork to a mason, who was to furnish the materials for his part at the price of $4,025. Those contracts had not been fully performed when the injury occurred, although the period fixed by their terms for the completion of the house had expired. It is now insisted that the damage, in so far as it extended to the structure under contract to the carpenter and mason, cannot be recovered by the plaintiff.

It appears from the proof that the damages occasioned by the freshet were assumed by the plaintiff. He proceeded to make good the injury. If he had a claim against the carpenter and mason for the non-completion of the contracts, he waived it, and bore the expense of repairing himself. Those persons suffered no loss, as it seems, for the reason that the plaintiff assumed it. In effect he accepted those jobs as completed, consequently they had no cause of action against the city, and the right to damages for the injury belonged to the plaintiff. The damages to the structure were properly recoverable by the plaintiff.

It is urged that the referee allowed erroneously the sum of $732.49, as damages for the loss of the use and occupation of the house. The evidence showed a loss for use and occupation for many months. Such loss was the necessary consequence of the injury. The proof was that it would then have rented for $800 for eight months; and it appeared that it required about that length of time to put the house in condition for occupation. It cannot be said that the amount allowed was unreasonable or unjust. The ground of objection to this item, and this is the only ground suggested by the defendant's counsel, that it is speculative, is not tenable.

It is next urged that the item of $261.87 for new sewerage was improperly allowed. This new sewer was constructed in 1868, and

was connected with the one built by the city along Federal street. It was made by the plaintiff for his own use and convenience.

The allowance for the expense of constructing that private sewer was improper. True, the plaintiff testified, that his sewerage, at the time of the injury, was connected with the old sewer — the crooked sewer; and after the injury, he connected with the Federal street sewer by the new one, for which the referee made the allowance. But there is no evidence showing the cost of the old connection with the crooked sewer, which old connection was destroyed or injured by the freshet; nor its then condition; nor the expense of restoring it to its former condition. Indeed, there is no evidence, or very little, going to establish the damage caused by the injury to the old connection. By what mode of estimate the referee got at the amount of $261.87 for damages to the old private sewer is not obvious. The assumption that the cost of the new sewer, to join with the Federal street sewer, was the amount of damages to the old one cannot be supported, with no proof of their relative expense of construction or other circumstances of relative value. The allowance of this item was erroneous.

It is also insisted that the sum of $376.43 for "miscellaneous repairs" was improperly allowed. The evidence showed that expenses for such repairs were incurred to a very considerable extent; and to an amount exceeding in the aggregate this sum, repairs, too, which became necessary by reason of the injury. No item going to make up this sum is pointed out to us as erroneous. If error was committed by the allowance of an improper item, this error should be made to appear by the party alleging it. For aught that appears, the items making up the sum allowed for "miscellaneous repairs" were proper items of damages.

No suggestion of error has been made by the defendant's counsel as to the items of damage allowed, save those above considered; and we find no error in the allowances by the referee, except as to the sum of $261.87 for the private sewer. Nor is there any question of evidence whatever raised before us.

It appears that the referee made a mistake in adding up the items of damage allowed by him. He made the aggregate too much by $31.52. Evidently this was simply an oversight in putting together the several sums and can now be easily corrected. The last two sums, amounting together to $293.39, with interest from June 27, 1866, must be deducted from the recovery.

A criticism has been made by the defendant's counsel as regards the referee's findings, which are alleged to be incongruous and irreconcilable. After careful examination of the findings, however, we are of the opinion that the criticism can hardly be sustained. The findings are substantially, if not. entirely, consistent, and certainly. there is no such contradiction in them as to demand a reversal of the judgment on that ground.

The judgment must be modified by deducting from the amount of the recovery the sum of $293.39, with interest thereon from June 27, 1866, and so modified it should be affirmed, but without costs of the appeal to either party.

MILLER, P. J., and BOARDMAN, J., concurred.

*Judgment accordingly.*