PECK *vs.* THE VILLAGE OF BATAVIA.

Where the powers conferred upon a municipal corporation, in respect to streets and side-walks, are specified in its charter, and such powers are merely *discretionary ;* no absolute and imperative duty to repair the side-walks being imposed upon the corporation; such corporation is not liable in damages to an individual, for injuries sustained in consequence of the defective condition of a side-walk.

Before an action will lie, at the suit of an individual sustaining peculiar damages, against a municipal corporation, for an omission to perform a duty enjoined by law, it must be shown that the duty has been imposed *absolutely* and *imperatively*, and does not rest in *discretion.*

The case of *Cole* v. *The Trustees of the Village of Medina*, (27 *Barb.* 218,) re-affirmed.

MOTION to set aside a nonsuit, granted upon the opening of the plaintiff's counsel, and for a new trial.

The material facts, as stated in the opening, were, that the defendant was a village corporation; that Mechanic's street was within the bounds of the corporation; that a plank side-walk had been constructed along said street, for the use of foot passengers; that there was, and had been for some time prior to October 5th, 1859, a large hole or excavation in said walk, at a place specified, caused by the removal or displacement of one of the planks; that the plaintiff, while passing over said side-walk in the discharge of his ordinary business, accidentally, and without any fault or negligence on his part,

Peck *v.* The Village of Batavia.

stepped or fell into said hole or excavation, and was thereby violently and seriously injured, &c. By means, &c. The court nonsuited the plaintiff, and he excepted.

*H. Wilbur;* for the plaintiff.

*James M. Willett,* for the defendant.

*By the Court,* MARVIN, J. It is claimed by the defendant's counsel that this case is controlled by *Cole* v. *The Village of Medina,* (27 *Barb.* 218,) decided in this, district. The plaintiff's counsel has attempted to show a distinction in the cases, and also insists that the decision at the circuit is in conflict with certain recent decisions of the court of appeals, to be hereafter noticed. It will be proper to bring into view all the statute law having a relation to the question we are to consider. By the act of April 9, 1853, (*Laws of* 1853, *ch.* 140,) "the village of Batavia" was incorporated. There were to be five trustees. By section 9, title 4, it is declared that the trustees shall have power to cause the side-walks, on the streets and highways in said village, to be leveled, raised, graveled, flagged and repaired, and ornamented with trees; and to compel the owners or occupants of any lands or lots adjoining such side-walks, to make such improvements upon such side-walks as aforesaid, and to determine and prescribe the manner of doing the same, and the materials to be used thereon, and the quality of such materials; in case the owner or occupant of such land or lots shall neglect or refuse to complete such required improvements, within such reasonable time as may be required by the trustees, the trustees may cause such improvements to be made and completed, and the expenses thereof may be then assessed upon such owner or occupant, and added to the next annual village tax upon said land or lots; or the trustees may direct the collection of the same by suit against the owner or occupant. By sec. 1, tit. 6, it is declared that the village shall constitute a highway district,

and the powers and duties of commissioners and overseers of the highway are devolved upon and shall be exercised by the trustees of said village, subject to certain provisions thereinafter contained. By sec. 2, power is conferred upon the trustees to appoint a superintendent of highways for the village, who shall possess all the powers and perform all the duties which overseers of highways possess and may perform, and he is to be subject to the direction and control of the trustees. By section 3, it is declared that the trustees shall have power to make, maintain, keep in repair, and from time to time cleanse all necessary drains and sewers in the streets and alleys in said village, and defray the expenses thereof out of the highway taxes. By section 5, the trustees have power to level and grade the streets and alleys of the village, and to establish and alter the grades, &c. By section 2, title 7, it is declared that the trustees shall have power to assess, levy and collect by tax upon the taxable inhabitants and property in said village, annually, such an amount denominated highway tax, as they shall deem necessary, not exceeding certain sums specified. The money is to be expended upon the streets, highways and bridges in said village; and as otherwise by the act authorized and directed; that is, by section 4, title 6, a portion of such tax, not exceeding one fourth, may be expended on highways leading to and from the village.

I think I have referred to all the provisions of the statute which can be claimed as having any relation to the question to be considered. It is seen that the statute contains special provisions relating to side-walks. The tax is a local tax, and there is no power to make it general "upon the taxable inhabitants and property in said village," as in the case of highway taxes. It is nowhere made the duty, *imperative* or *discretionary*, of the corporation, to make and repair the side-walks. Certain powers, relating to side-walks, are conferred upon the trustees. These powers are discretionary. No absolute and imperative duty is imposed. The case comes clearly within the decision in *Cole* v. *The Trustees of Medina,*

and the cases there cited. That case was decided at the May general term, 1858, and it is supposed that certain decisions made by the court of appeals, commencing with *Hickok* v. *The Trustees of the Village of Plattsburgh*, reported in a note to *Conrad* v. *The Trustees of the Village of Ithaca*, (16 *N. Y. Rep.* 158,) decided at the September term, 1857, are inconsistent with the decision in *Cole* v. *The Trustees of Medina*, and that such decision is therefore no longer authoritative. In the principal case, *Conrad* v. *The Trustees of the Village of Ithaca*, the corporate name of the village was, "The trustees of the village of Ithaca." By the act, the trustees were made commissioners of highways. They constructed a bridge within the village, and with its funds, in a manner so negligent and unskillful, that by means thereof the plaintiff's building was carried away during a freshet. It was held that the building of the bridge was a corporate act; that the powers given to the trustees, as commissioners of highways, vested in them, not as individuals or as independent officers, but as a part of the municipal power of the corporation, for the benefit of which they were to be exercised, and that the corporation was therefore responsible for their acts and omissions in that capacity. The building of the bridge was regarded as a corporate act, and the action was treated as one against the corporation; and so regarding the act and the action, there was ample authority for holding the corporation liable for the damages sustained by reason of its negligence and unskillfulness in erecting the bridge. (*See The Rochester White Lead Co.* v. *The City of Rochester*, 3 *Comst.* 463.) Denio, Ch. J. in his opinion, refers to *Hickok* v. *The Trustees of the Village of Plattsburgh*, decided at the June term, 1856, but not reported, and says: "The question was whether the trustees of a village, in respect to their functions as commissioners of highways, are to be regarded as the agents of the corporation in such a form as to make the latter responsible for their acts or omissions, according to the law of master and servant; and that the decision of the court was, that the corporation

was liable for the negligence of the trustees in their functions of highway commissioners. It appears, from Judge Denio's opinion, that the trustees neglected to fill up a ditch which a wrongdoer had excavated in the street; and he adds: "It was held to be a corporate duty to keep the street in a safe condition." The reporter, in a note, refers to *Hickok* v. *The Trustees of the Village of Plattsburgh*, and says that an opinion of Justice Selden, in the case of *Weet* v. *The Trustees of the Village of Brockport*, delivered by him while upon the bench of the supreme court, was read and adopted as a correct exposition of the principles governing in actions of this character, and published such opinion as a note. The action was against the corporation, its name being "the trustees of the village of Brockport." The trustees undertook to construct a platform to connect the corner of the canal bridge with the side-walk. It was partially constructed and left over night in an unfinished and dangerous condition, by reason of which the plaintiff, without fault, was injured. The plaintiff was nonsuited, on the ground that the action would not lie against the corporation, but that it must be against the trustees individually, as commissioners of highways. The nonsuit was set aside, and Justice Selden, at special term, delivered the opinion in question, holding that the act was a corporate act, creating a nuisance, and citing *The Rochester White Lead Co.* v. *The City of Rochester*, (3 *Comst.* 463,) and *Lloyd* v. *The Mayor &c. of the City of New York*, (1 *Seld.* 369.) He recognizes and asserts the well settled principle, that whenever a corporation assumes to exercise its powers, it is bound to see that due care and caution are used to avoid injury to individuals. It is, of course, responsible for its negligence and want of care, as an individual would be. The learned justice considered the question whether town commissioners of highways, in this state, are liable to a civil suit for the neglect of their duty to keep the highways and bridges of their towns in repair. He discussed the question with great ability, and comes to the conclusion that they

are not; a conclusion in which I most fully concur. And I may add, that I think the opinion has settled the doubts existing, to some extent, upon the question arising from some previous dicta and decisions, especially *Adsit* v. *Brady*, (4 *Hill*, 630.) Much of the opinion is devoted to the consideration of the liability of corporations, and the grounds upon which they are held liable for damages in actions instituted by individuals. If I understand the learned justice correctly, he educes the obligation and duty, on the part of the corporation, to individuals, from a contract supposed to be entered into by and between the public and the corporation, the consideration for which consists in the franchises, powers and privileges granted by the state to the corporation.

I am somewhat in doubt whether the learned justice intended to maintain the position that all powers of a public nature, conferred upon a corporation, raise the *duty* of exercising the power. Such a provision would be extremely comprehensive and sweeping in its operations. It would be only necessary to turn to any of the numerous charters incorporating the cities and villages in this state, and read the powers conferred, generally, upon the mayor &c. or trustees, to be exercised, in the language of the opinion in *Conrad* v. *The Trustees of the Village of Ithaca*, by them, "as the agents of the corporation in such a form as to make the latter responsible for their acts or *omissions* according to the law of master and servant." I am inclined to think that the learned justice did not intend to maintain such a position. It was not necessary to the decision of the case, nor to the position that the liability of corporations has its foundation in contract express or implied; nor do the cases cited by him inculcate such a principle. If the obligation arises out of contract, then we must, of course, ascertain what the contract is, and this at once presents the question of *construction* in all cases where the contract is to be found in the statute. In *Henly* v. *The Mayor &c. of Lyme*, (5 *Bing.* 91,) cited by the learned justice, the contract clearly appeared. It was contained in a grant made by the

crown, and the court spoke of it as "the condition upon which the grant was made." By this condition the defendant was to repair and maintain certain sea banks and mounds. The plaintiff had a special interest in the performance of this condition, and sustained private damages in consequence of its breach by the defendant; and the question was whether he could maintain the action. It was insisted that the crown alone could take advantage of a breach of the condition of the instrument and letters patent. The court held the defendant as a corporation liable. In other cases referred to by the learned justice the contract appeared in the declaration. Thus in *Yielding* v. *Fay, (Cro. Eliz.* 569,) it was averred in the complaint that the defendant *was bound by custom* to keep a bull and boar for the use of the parishioners, the plaintiff being one of them, &c. See the other case referred to by Justice Selden, and his remarks, claiming that the liability rests upon contract. As I have already said, we must ascertain what the *contract is,* and see whether it raises a *duty,* public or private. I have always understood that when power is conferred upon a corporation, and an absolute and imperative duty to exercise the power is imposed, an individual who sustains a damage, peculiar to him, in consequence of the omission to exercise the power, may maintain an action; and that this rule applies to a large class of public officers. I have supposed that a distinction between duties judicial and discretionary in their nature, and those which are *imperative* was clearly established by the decisions in this state. (*See* 1 *Denio,* 595.) For the purpose of considering whether the duty is imperative we resort to *construction,* and take into consideration the nature of the case. Thus, I can understand why Lord Holt should have said, "if a ferry were granted at this day, he that accepts such grant is bound to keep a boat for the public good;" and again, "he that has a new ferry by grant, when he accepts it, charges himself with the repairs and keeping it." Again; the word *may* as

used in a statute is sometimes, by construction, made to read *must*, thus creating a duty.

Now I admit the language of our statutes relating to highways and bridges, is sufficiently comprehensive to justify a construction raising an *imperative duty* on the part of commissioners of highways to cause the highways to be kept in repair. Indeed the reading of the statute is, that it shall be their duty to cause the highways and bridges to be kept in repair. (1 *R. S.* 508, § 1.) And yet, notwithstanding such injunction, it has been almost universally understood in this state, since the decision of *Bartlett* v. *Crozier*, (17 *John.* 438,) that no action would lie against commissioners of highways for an omission of the duty as enjoined in the statute. Chancellor Kent, as a member of the court for the correction of errors, discussed the question very elaborately, and went fully into the English law, in his opinion, from *p*. 451 to 461. After stating that there is no certain stable absolute duty in the case, he adds : "It is not like the case of an individual bound by a private statute, or by a certain tenure, to keep a road or bridge in repair, nor like the case of turnpike companies. There the duty is perfect, and binding at all times, and is founded on a valuable consideration. The roads and bridges must, at all events, be kept in repair according to ordinary diligence. It is a condition of the grant. The duty is not casual or contingent, but inevitable. In the case, however, of these commissioners and overseers, the duty depends upon a train of circumstances : it is very indefinite, and is varied and regulated by discretion. There is not that precision and certainty of duty that ought to make them responsible to individuals, to any extent, and for any damage. The law has not supplied them with pecuniary means, or armed them with coercive power requisite to meet and sustain such an enormous and dangerous responsibility." We here see the ground upon which the chancellor placed his opinion, and I shall have occasion to refer to this extract hereafter. I will here remark that he was giving *construction* to the statute, and

he failed to discover in it any "certain, stable absolute duty" imposed upon the commissioners. He does not assign as a reason for their non-liability that they were not a corporation, having received a consideration in the grant of privileges and franchises in the form of *powers* to make and repair the highways. He does not intimate that they would not be liable, in a private action, by one peculiarly aggrieved, if the statute had imposed upon them a clear, certain, stable and absolute duty, and had furnished them the means of performing the duty. Now as I understand the state of the law as established in *Hickok* v. *The Trustees of the Village of Plattsburgh*, it is that an incorporated village, being a separate highway district, whose trustees are, by its charter, constituted commissioners of highways, or upon whom is devolved the powers and duties of highway commissioners, is liable in an action, by a private individual, for damages arising by reason of the defective condition of the streets and highways in such village; in other words, for the omission of the corporation (assuming it responsible for the omissions of its trustees) to keep in repair the streets and highways. And as I understand, this position is reached by giving to the statute an effect, when applied to a municipal corporation, not given to it when applied to town commissioners of highways, in reference to whom the statute was made. And this upon the idea that in the latter case there was no contract, founded upon a good consideration, between the state and the highway commissioners, that they should perform the duties enjoined in a general way in the statute; and in the former that such contract may be implied, having for its consideration "privileges of great value," and "franchises," conferred by the charter, and that for the breach of such contract an individual, sustaining damage, may maintain an action. It is not for me to question the soundness of this position. Indeed when a case arises in which it is in point, I shall of course follow it. But I may be permitted to say, with great respect for the very able and learned judge, upon whose

reasoning the court proceeded, that his opinion has failed to satisfy my mind of the correctness of the position.

Why should the statute receive a *construction* different, when applied to a municipal corporation, from that given to it when applied to commissioners of highways ? For, before the liability of either, to a private action, can be established, the duty, certain, stable and absolute, or in the language of some of the judges, absolute and imperative, not discretionary or judicial, must be found. When so found, either from the nature of the case, or from the construction given to a statute, the liability for a neglect to perform the duty may, in a proper case, exist. As I understand the cases referred to by the learned judge, they do not sustain the position upon which I am remarking. They contain no intimation that the same statute may be so construed as to impose an imperative duty upon a municipal corporation, in the form of a contract, where such duty would not exist when the same statute is applied to public officers. Nor do I find any such distinction in the English cases. I agree that by the common law, grantees of franchises, whether corporations or individuals, have been held to a strict performance of every condition of the grant, either express or implied ; and that the grantee of a ferry is bound to keep and maintain a suitable boat, and the grantee of the right to erect a bridge or construct a turnpike road and take toll, to keep such bridge or road in repair, whether so expressed in the charter or not. And I consent that this obligation or duty arises out of contract founded on a valuable consideration. The grantees have the exclusive privilege of taking tolls, and the privileges conferred upon them are for the mutual benefit of themselves and the public. Chancellor Kent, in the opinion referred to, speaks of this class of cases. But the question constantly recurs, what are the duties imposed, and what are their character, imperative or discretionary ? And what are the conditions of the grant, as expressed or implied ? The duty sometimes arises out of a simple power, or authority to do a thing, and

is declared to be absolute on account of its being of public concern and relating exclusively to public welfare. It was upon this principle that Ch. Justice Nelson based his opinion in part, in *The Mayor &c. of N. Y.* v. *Furze*, (3 *Hill*, 614;) adding, however, that if it should be conceded, that the exercise of the power, (making sewers &c.,) was in the first instance optional on the part of the corporation, yet having elected to act under it, they must be held responsible for a complete and perfect execution. In *Wilson* v. *The Mayor of New York*, (1 *Den.* 600,) the court refer to the case in Hill, and are careful to place it upon the latter position of Judge Nelson. And it is denied that from the power conferred to make sewers &c. any imperative duty arose, or could be inferred. In this case Judge Beardsley states very clearly the law in relation to liability, and, observe, the action was against a municipal corporation. He however intimates no distinction. He speaks of errors arising from confounding powers and duties, which, he says, are totally dissimilar. When the duty is absolute, certain and imperative, the delinquent officer is bound to make full redress to every person who has suffered by such delinquency. If the powers are judicial or discretionary, there is no liability to individuals. There is also a class of cases where the power, in form, as given in the statute, is permissive, as *may* do a certain thing, instead of *shall*, and the courts, in view of the subject matter, have so construed the statute as to create an *imperative duty;* as when the statute reads " the sheriff *may* take bail, it was construed, he *shall*, for he is compellable to do so." (*See other cases cited by Nelson, Ch. J.,* 3 *Hill,* 615.) By the common law, in England, the duty of repairing bridges belonged to the county. By a statute of Henry 8, it was enacted that if a bridge was within any city or corporate town, the inhabitants thereof should make and repair it, and if not within any city or corporate town, then the inhabitants of the shire or county should make and repair it; and yet I think no case of a private action for damages can

Peck *v.* The Village of Batavia.

be found for a breach of such duty. The only remedy was by presentment, or an indictment. But when an individual or corporation was charged with the duty, under some condition of tenure, or prescription, then an action will lie at the suit of one having a peculiar interest in the performance of the duty, and who, by its breach, sustains damages peculiar to himself. Such was the case of *Henly* v. *The Mayor &c. of Lyme.* See, again, Chancellor Kent's opinion in *Bartlett* v. *Crozier*, (17 *John.* 452 *et seq.*)

If it be conceded that an action will lie at the suit of an individual, sustaining peculiar damages, against an officer or corporation, for an omission to perform a duty enjoined by law, it must of course be first established that the duty has been imposed absolutely and imperatively. So, I insist, are all the authorities. This of course brings us to the statute—our highway act—and I have said above, its general language might have been construed as imposing an imperative duty to cause the highways to be kept in repair. But in considering the entire statute, and the system it establishes, it was decided more than thirty years ago, that no such imperative duty was imposed. The question was elaborately considered by Chancellor Kent, in *Bartlett* v. *Crozier*, (*supra*.) And the views expressed by him have been concurred in and approved more than a fourth of a century, and I am not aware of any authority to the contrary. The case in 3 *Hill*, (*supra*,) had reference to the repairing of sewers, and many satisfactory reasons may exist for holding a city that has constructed sewers, bound imperatively to keep them in repair so that they shall not become nuisances, when such reason may not exist for holding a city, village or town, imperatively bound to keep the streets and highways in repair. Justice Selden, in *West* v. *The Trustees of the Village of Brockport*, held that town commissioners of highways were not liable, but that a municipal corporation to which the statute was applied might be liable. This latter position was not necessary to the decision of the case, as the case came clearly within *The*

*Rochester White Lead Co.* v. *The City of Rochester,* viz. negligence in the execution of the work. But the court of appeals, upon the distinctions and reasoning of Justice Selden in *West's case,* did decide, in *Hickok* v. *The Trustees of the Village of Plattsburgh,* that the corporation was liable for its neglect to keep the highway in repair. Thus establishing, as I think, an entirely new precedent, and directly in conflict with the previous constructions of our highway statutes; and this too without any written opinion in the case, and upon an opinion in the other case, delivered at a special term, in which not a single provision of our highway statutes is referred to; and in which no notice is taken of *Bartlett* v. *Crozier,* (17 *John.* 452,) and in which no attempt is made to give construction to the various provisions of the highway statute, and explain the system, as a whole. It seems to me unfortunate that a decision so important as *Hickok* v. *The Trustees of the Village of Plattsburgh,* should have been given to the public in the form and manner it has been. The question whether our incorporated villages are liable in an action by an individual for damages arising from neglect to repair the streets and highways within its boundaries, when the village is a road district &c., is one of very great importance, and were it open to discussion, it seems to me that it would not be difficult to establish, upon principle and authority, that such corporations are not liable, and ought not to be liable, for damages in a private action; that in the language of Kent, "There is not that precision and certainty of duty that ought to make them responsible to individuals to any extent, and for any damage. The law has not supplied them with any pecuniary means, or armed them with the coercive power, requisite to meet and sustain such an enormous and dangerous responsibility." And I may add, as I said, in substance, in *Cole* v. *The Trustees of Medina,* I apprehend that very few of our villages would consent that an imperative duty should be imposed upon them to make or cause to be made, and kept in repair, their streets and side-walks, thus

involving taxation to an unknown extent. The inhabitants and tax-payers are content that trustees elected by them should have certain *discretionary* powers over them, relating to streets, side-walks and a great variety of other matters. But it would be a great revolution to change these numerous discretionary powers into *absolute* ministerial *duties*, so as to make the corporation liable in an action for damages arising from any neglect to perform the specified work or act.

In the case under consideration it was a *side-walk* that was out of repair. The power given to the trustees, or the defendant, over this subject, is specified in the statute, and is clearly discretionary. It is independent of the powers and duties pertaining to commissioners of highways, as their powers and duties relate to highways and bridges, and not to side-walks in incorporated villages. I do not regard *Hickok* v. *The Trustees of the Village of Plattsburgh* as in point. But *Cole* v. *The Village of Medina* is. A new trial is denied, and judgment ordered for the defendant.

[ERIE GENERAL TERM, November 12, 1860. *Marvin, Davis* and *Grover,* Justices.]