## HERRINGTON *vs.* THE VILLAGE OF CORNING.

It results from the several provisions of the general statute of 1847, authorizing the incorporation of villages, (*Laws of* 1847, *p.* 532, *ch.* 426,) that a village incorporated thereunder has no power to cause sidewalks to be made or constructed except in the mode, and by means of the agencies, therein provided; that the trustees have no authority to construct or repair sidewalks, until the electors, by resolution duly adopted, direct them to cause the work to be done, and also direct them to cause money to be raised by tax for the necessary advances for such work; that the powers of the electors over the subject are limited; and that within the limits prescribed, their powers are wholly discretionary.

Until the electors have directed the work to be done and the money to be raised, and the money has been raised, there is no fixed and absolute duty on the part of the trustees to cause the work to be done.

It was not the intention of the statute to confer upon the corporations formed under it, or upon their officers, an absolute power to make, or cause to be made and kept in repair sidewalks along their streets, thus involving taxation to an unknown extent; but the subject is referred to the discretion of the electors in their collective capacity, who by their action may impose upon the trustees the duty of causing any particular sidewalk to be made or repaired.

The policy of the statute is to protect the rights of individual lot owners against an undue wielding of corporate or official power; and if, in consequence of its operation, useful repairs or constructions are sometimes delayed or prevented, whereby an individual sustains peculiar damage, he suffers no legal injury, and the law gives him no remedy.

The peculiar provisions of the act of 1847, prescribing the only means by which the corporate power to make or repair sidewalks can be exercised, and limiting the authority of the trustees, and of the electors themselves, on that subject, leave no room to imply a contract by the corporation to make sidewalks, or keep them in repair, otherwise than as the statute prescribes.

Herrington *v.* Village of Corning.

Where an injury to the plaintiff resulted from the decayed condition of a side-
walk which the defendants, a village incorporated under the provisions of
the act of 1847, had caused to be constructed several years before the injury,
in front of a lot owned by a non-resident; it not appearing that prior to the
injury any resolution had been adopted at a meeting of the electors, direct-
ing the trustees to cause that particular sidewalk to be repaired, or provid-
ing that money be raised by tax for the necessary advances therefor; *it was
held,* that no action could be maintained against the village corporation, for
such injury.

*Held, also,* that a resolution adopted by the electors of the village, prior to the
injury, authorizing the trustees to cause sidewalks to be built and kept in
repair by the owners of lots "on each and every street of the village, when
in their judgment the good and welfare of the inhabitants" should require
it, "without any further vote of the people," did not aid the plaintiff's case;
it being of questionable authority as not specifying any sidewalk to be con-
structed or repaired, and if valid it was not mandatory in respect to any
particular sidewalk, but conferring a general and purely discretionary power
as to what sidewalks, if any, should be made or repaired, and as to the time
when the work should be done.

Section 18 of chapter 559 of the Laws of 1864, amending the general statute
of 1847, so far as it relates to a fund for sidewalks, refers to such sidewalks
only as are directed to be made or repaired pursuant to the provisions of
section 15, of the same act, to wit, after a vote by ballot, for the purpose, by
a majority of the taxable voters of the village, does not apply to a case where
there is no evidence that such a vote has been taken.

A village corporation is not liable for personal injuries resulting from the
decayed condition of a sidewalk, on the ground that, having constructed the
sidewalk originally, it is bound to keep it in repair.

THIS was an action to recover damages for an injury
sustained by the plaintiff in consequence of a defective
sidewalk in the village of Corning.

The defendant was incorporated prior to 1858, pursuant
to the general act of December 7, 1847, "to provide for
the incorporation of villages." (*Laws of* 1847, *ch.* 426.)

On 4th September, 1864, the plaintiff stepped into a hole
in the sidewalk on the north side of market street, in the
village of Corning, in front of lot 45, and injured his knee.
The hole was caused by some of the planks constituting
the walk having become displaced by use or decay. In
1858 the defendants constructed a good sidewalk in a proper
manner on that side of that street in place of one previously

there, which had become out of repair, the prior one
not having been made by the defendants. The plaintiff
was, and had been for twenty years, a resident and elector
of said village, and in the habit of passing daily along that
street. No funds were provided for the reconstruction or
repair of the sidewalk in question, prior to the time of the
injury, nor had any resolution been adopted by the electors
of the village, directing the trustees to remake or repair
that walk. The electors had, prior to the construction of
the sidewalk, in 1858, passed a general resolution at a
meeting in March, 1858, by its terms authorizing the trus-
tees " to cause sidewalks to be built and kept in repair
by the owners of lots," &c. And at a meeting of the trus-
tees in July, 1858, a resolution was adopted to the effect,
that the trustees should cause the owners of the lots to
make and repair sidewalks. The lot in front of which the
defendant was injured, belonged to Joseph Fellows, who
did not reside in the village at the time of the injury.
The three lots next west of this lot were owned by resi-
dents. These parties and Joseph Fellows relaid the walks
in front of these lots in 1865.

There was no evidence or pretense that the defendants
produced the defect in the walk, but the plaintiff charged
non-feasance on the part of the defendants, merely.

On the trial, at the circuit, when the plaintiff rested his
case, the defendants' counsel moved the court, that the
plaintiff be nonsuited, on the grounds :

" 1. That the statute does not impose upon the defend-
ants an imperative or ministerial duty, to make or repair
sidewalks, but that the power conferred by statute on the
defendants in that respect is discretionary or judicial in
its character. The defendants, therefore, are not liable for a
mere omission to repair the sidewalk in question.

2. That there is no proof of any act on the part of the
defendants, producing the defect complained of in the
sidewalk in question.

Herrington v. Village of Corning.

3. That it not only does not appear that any funds were raised, or provision made for the repair of the sidewalk in question, or any action by the electors to afford authority to the trustees to repair the same, but it does appear that no funds were raised or provision made for such purpose.

4. That the duty in respect to sidewalks conferred on the defendants by statute, is to the public, and for omission to exercise it, the defendants are not liable to individuals, but to the public only.

5. That the plaintiff being one of the electors of the village of Corning, and as such chargeable with knowledge of the condition of the sidewalk, his negligence must be deemed to have contributed to the injury complained of. And he, as such elector, must also be deemed chargeable with the omission of the defendants to cause the repair of the sidewalk in question."

The court granted the motion and nonsuited the plaintiff. To which ruling and decision the plaintiff's counsel duly excepted. Whereupon the court made an order directing that the plaintiff have sixty days to make and serve exceptions, and the defendants the same time to serve amendments thereto, and that said exceptions be heard in the first instance at general term.

*Brown & Graves*, for the plaintiff. I. The duty is imposed upon the defendants as a municipal corporation, to build and keep in repair the streets and sidewalks within said village. That duty is imperative: "For when a public body is clothed by statute, with power to do an act which concerns the public interests, the execution of the power may be insisted on as a duty, though the statute conferring it be only permissive in terms." (*Hutson* v. *The Mayor, &c. of N. Y.* 9 *N. Y. Rep.* 168. *Mayor, &c. of New York* v. *Furze*, 3 *Hill*, 612. *Adsit et al.* v. *Brady*, 4 *id.* 630. 1 *Denio*, 601. *Storrs* v. *City of Utica*, 17 *N. Y. Rep.* 104.) 1. The defendants, by accepting their charter,

became bound, by the conditions thereof, to keep the side-walks on the public streets within the village of Corning in repair, and as a consideration for this, received certain grants, privileges and franchises. (*See Charter Village of Corning; Laws of* 1847 *and amendments thereto; Laws of* 1851, 1852, 1855, 1857, 1860, 1861, 1862 *and* 1864.) 2. Having accepted, acted under, and enjoyed the benefits of their charter, the defendants are bound by its conditions, and if they fail to perform them, are liable for such special damage as any person may sustain by reason thereof. (*Hutson v. The Mayor, &c. of New York,* 9 *N. Y. Rep.* 168. *The Mayor, &c. of New York* v. *Furze,* 3 *Hill,* 612. *People* v. *Corporation of Albany,* 11 *Wend.* 539. *Heacock* v. *Sherman,* 14 *id.* 58. *Mayor, &c. of New York* v. *Bailey,* 2 *Denio,* 433.) 3. It is the duty of the trustees, as. public officers, to keep and maintain the sidewalk in repair; for this purpose they are empowered to raise sufficient funds. (*See cases above cited; also Mayor, &c. of Albany* v. *Cunliff,* 2 *N. Y. Rep,* 165; *Rochester Lead Co.* v. *City of Rochester,* 3 *id.* 463; *Dygert* v. *Schenck,* 23 *Wend.* 446; *Pierce* v. *Dart,* 7 *Cowen,* 609.) 4. "The board of trustees have power, and it shall be their duty to direct the manner of making and repairing sidewalks," &c. (3 *General Statutes, p.* 800, § 57, *subd.* 22.) 5. "It shall be the duty of the trustees to carry into effect every resolution adopted at any meeting of the electors of such village, which such meeting shall have authority to adopt." (3 *General Statutes, p.* 800, § 57, *subd.* 10.) 6. The electors of the village of Corning on the 2d day of March, 1858, passed a resolution authorizing the trustees of the village of Corning to cause sidewalks to be built and kept in repair by the owners of lots on each and every street in said village, when, in their judgment the good and welfare of the inhabitants should require it, without any farther vote of the people. 7. If the owner of the lot (in front of which the sidewalk is to be made or repaired) be not a resident of said village,

Herrington *v.* Village of Corning.

the trustees *shall cause* the same to be built or repaired. And in such case they are required to keep an account of the expenses thereof, which shall be a tax against him and a lien upon such lot. (*See General Statutes, p.* 798, § 47.)  8. The lot in front of which the plaintiff was injured was owned by Joseph Fellows, who was not a resident of said village.

II. The defective sidewalk in question was originally built by the defendants.  Therefore, if the defendants are not liable for a refusal or omission to construct a sidewalk, yet, having made it as an improvement or public work, as they are authorized to do, the duty is imperative to preserve and keep it in proper repair.  (*Barton* v. *The City of Syracuse,* 36 *N. Y. Rep.* 54.  *Mills et al.* v. *City of Brooklyn,* 32 *id.* 489.  *Hutson* v. *Mayor, &c. of New York,* 9 *id.* 163–70.  *Conrad* v. *Trustees of Ithaca,* 16 *id.* 158.  *Rochester White Lead Co.* v. *City of Rochester,* 3 *id.* 463.  *Mayor, &c. of New York* v. *Furze,* 3 *Hill,* 612.  *Barton* v. *City of Syracuse,* 37 *Barb.* 292.  *Wilson* v. *Mayor, &c. of New York,* 1 *Denio,* 595.)  1. In the construction of sidewalks and keeping them in repair, municipal corporations act *ministerially,* and are bound to exercise needful diligence, prudence and care.  (*Barton* v. *City of Syracuse,* 36 *N. Y. Rep.* 54; 37 *Barb.* 292.  *People* v. *Corporation of Albany,* 11 *Wend.* 539.  *Mayor, &c. of New York* v. *Furze,* 3 *Hill,* 612.)  2. Where the trustees of a village are declared commissioners of highways therein, they are not, as such, independent officers, but agents of the corporation, and are liable for their acts and omissions, according to the law of master and servant.  (*Conrad* v. *Trustees of Ithaca,* 16 *N. Y. Rep.* 158.  *Hutson* v. *The City of New York,* 5 *Sandf.* 289.)  3. It does not remove the defendants' liability that they may by ordinance impose the duty of repairing sidewalks upon adjoining owners.  (9 *Abb.* 40. 2 *Hill,* 466.  16 *Abb.* 341.  3 *Barb.* 329.)

III. The defendants were provided with abundant re-
sources and remedies to supply themselves with funds:
1. "If the owner be a non-resident, the trustees shall cause
the sidewalk to be made or repaired; keep an account of
the expenses thereof, which shall be a tax against him and
a lien on the lot." (*See* 3 *General Statutes, p.* 798, § 47.)
2. The land may be leased for non-payment of the expenses
incurred by the trustees in making or repairing sidewalks.
(3 *General Statutes, p.* 799, § 50.) 3. The real estate may
be sold by the trustees for the expenses in making or
repairing sidewalks. (*Session Laws,* 1864, *ch.* 559, § 1.)
4. "The trustees shall have power to raise by tax a fund
for advances, that may be required for sidewalks, &c. which
funds shall be raised as other taxes in said village." (*Ses-
sion Laws,* 1864, *ch.* 559, § 18.) 5. Therefore, a lack of
funds is no defense. (*Wendell* v. *Mayor, &c. of Troy,*
39 *Barb.* 338. 5 *Sandf.* 289. 31 *Barb.* 143. 28 *How.* 211.)

IV. The injury resulted from an omission of duty—the
neglect to do an act incumbent upon the defendants to
perform. Therefore, no notice to the defendants of needed
repairs was necessary. (*Barton* v. *City of Syracuse,* 36 *N. Y.
Rep.* 58. 5 *Duer,* 674.) Notice may be inferred from
lapse of time. (*Davenport* v. *Ruckman,* 16 *Abb.* 341. *Bar-
ton* v. *City of Syracuse,* 37 *Barb.* 293–300.)

V. From the foregoing authorities it is apparent that
the duty of keeping in repair the sidewalks already built
by the defendants, was an imperative duty upon them,
and as they had by statute the power to supply themselves
with funds for that purpose, there is no excuse for not
doing so. The judgment of nonsuit should be reversed,
and a new trial granted.

*Geo. B. Bradley,* for the defendant. I. The defendants
being a municipal corporation with its powers and duties
defined and specified, its trustees can execute no powers
except those conferred, and have no duties to perform ex-

cept those imposed by statute. 1. By reference to the statute it will be seen, that while the duty is imposed upon the trustees to make and repair crosswalks, they are not required to construct and repair sidewalks. In the latter case the powers conferred on the defendant are in their nature judicial or discretionary, and depend upon the refusal or neglect of the owners of the lots to do it. The statute provides that at a meeting of the electors, those entitled to vote, " may by resolution direct the trustees to cause to be raised by general tax for the purpose of constructing and repairing crosswalks." (*Laws* 1847, *ch.* 426, § 28, *sub.* 8.) And for the necessary advances for making and repairing sidewalks, in cases where those required to make or repair them shall neglect or refuse to do so. (§ 28, *sub.* 7.) Until funds are thus raised, the trustees have no power to make or repair sidewalks. The statute has practically prohibited it, by providing that the " village shall have no power to borrow money, nor shall it be liable to pay money borrowed on its account or advanced in its behalf, by its officers or by any other person, nor shall any of its money or property be applied to any such purpose, Nor shall such village incur any debt or liability beyond the amount of the taxes applicable to the payment of such debts or liabilities which shall have been voted to be raised in such village according to law." (*Laws* 1847, *ch.* 426, § 43.) And "no officer shall have power to assent to incurring any debt or liability," &c. (§ 44.) Then before any tax can be voted to be raised at any meeting of electors for any purpose, "a three weeks' notice of the holding of such meeting shall be given, (§ 11,) which shall specify the amounts and objects of such tax, and the specific sum required to be raised for each object, and shall state that such meeting will be called upon to vote in that respect," &c. (§ 29.) And " every resolution adopted at any such meeting, directing any tax to be raised, shall distinctly specify the object for which such tax shall be directed to be

raised, and the sum to be applied to each object, otherwise the resolution shall be void." (§ 30.) Then the trustees have no authority to cause sidewalks to be made or repaired, until directed by a resolution passed by vote of electors pursuant to statute which provides that the electors at a meeting, " may by resolution direct the trustees to cause sidewalks to be made or repaired." (§ 45.) " But no such resolution shall be adopted unless the requisite (three weeks) notice of such meeting shall state that such resolution will be proposed at the meeting." (§ 45.) And the resolution, as well as the notice, must particularly specify the place in the village where the trustees may cause the sidewalk to be made or repaired. (§ 45.) Then following this action of the electors, the trustees have no power to cause the sidewalk referred to in the resolution to be made or repaired, until the owner of the lot, if a resident of the village, has neglected or refused, after sixty days notice. That notice to the owner is unnecessary if he be a non-resident. (§§ 46, 47.) By these provisions of the statute, and others in the general act referred to, it appears that the owners of the lots along the streets are primarily entitled, and it is their duty to construct and repair sidewalks along their respective lots, and that the defendants have only a power or authority to be exercised in a certain event, which must from its very nature, as conferred, be only judicial or discretionary. (*Cole* v. *The Trustees of Medina,* 27 *Barb.* 218. *Peck* v. *The Village of Batavia,* 32 *id.* 634; *approved in Mills* v. *The City of Brooklyn,* 32 *N. Y. Rep.* 497, 498.) It will be seen by the two cases first above cited, that the statutory authority, or power of the villages of Medina and Batavia, approached nearer a duty, than the powers conferred by the provisions of the general act under which the defendants were incorporated. 2. The liability of a municipal corporation for mere non-feasance depends entirely upon the statute. The acceptance of the charter fastens upon the corporation all the duties imperative in

their character, which the legislature have imposed, and a liability growing out of any omission to perform them. (*See cases above cited.*) The cases of *Conrad* v. *The Trustees* in *of Ithaca,* (16 *N. Y. Rep.* 158,) and *Weet* v. *Trustees of Brockport,* (*added as note, page* 61,) determined the liability cases of negligent execution of duty. And the case of *Hickok* v. *Trustees of Plattsburgh,* unreported, referred to page 161, held there was a liability for omission to perform the duty imposed. None of these cases have any material application to this case. They are referred to by the court in *Peck* v. *The Village of Batavia,* (*supra.*) And it is not important for the purposes of this case, whether the liability of a municipal corporation is based upon a breach of contract, as argued by the justice in the case of *Weet* v. *The Trustees of Brockport,* or neglect of a duty imposed, as recognized in other cases ; for in either case to create liability for an omission merely, the statute must impose a well defined and unrestrained duty on the corporation. 3. The statute not only fails to impose any such duty upon the defendants in respect to sidewalks, but restrains the exercise of authority in that respect, so that the defendants are not at liberty to construct or repair them, until certain action has been taken at a meeting of the electors duly notified, after the necessity of such construction or repair has been produced, and after the owner has neglected or refused to construct or repair. There is no authority to keep in repair, because there is no authority to act in the premises, until after repair is necessary. And the same with respect to construction. And then from the very nature of the authority conferred, and the manner provided for its exercise, it must be discretionary. It cannot be claimed that if a plank were displaced in the walk, it would be the imperative duty of the defendants to call a meeting and give the requiste notices and raise funds to replace the plank. And until then the defendants would possess no power to make the repair, or to obtain funds for that purpose.

II. The fact that a resolution was adopted by the electors in March, 1858, to authorize the trustees to construct and repair sidewalks, in no manner aids the plaintiff. 1. The electors had no authority to adopt any such resolution, and no funds were authorized to be raised, under or by it. The resolution must specify particularly the sidewalk to be made or repaired, (§ 45,) with view to raising funds by resolution, to be passed in like manner, (§ 28, *sub.* 7, §§ 29, 30.) The statute does not permit general authority to be conferred on the trustees, in this respect. 2. After the adoption by the electors of this resolution, the trustees constructed the sidewalk in question, and fully exercised and exhausted any authority which they previously had in respect to that walk. 3. But it is of no importance what the effect of the resolution was, in respect to the authority of the trustees to construct or repair the walk. It clearly could not create such duty on the part of the defendants as to make it chargeable for an omission to exercise it. No action of the defendants through their electors or trustees can create a duty to charge itself for neglect to perform it. It is sufficient that no imperative duty is imposed by the statute. The part exercise of a discretionary power does not convert it into a statutory duty.

III. The question of unskillful execution of authority is not in this case; so many of the cases upon that subject have no application. The defendants, in 1858, properly constructed the sidewalk in place of one which had been there. It cannot now be insisted that every power conferred is an imperative duty, although some *dicta* of the court in the *Mayor* v. *Furze*, (3 *Hill*, 612,) appear to that effect, since they have been entirely disproved in *Wilson* v. *Mayor, &c.* (1 *Denio*, 600, 601 ;) *Mills* v. *Brooklyn*, (32 *N. Y. Rep.* 499.) And a plain distinction is observed between duties imperative, and powers discretionary or judicial in character. (*Kavanagh* v. *Brooklyn*, 38 *Barb.* 237. *Wilson* v. *Mayor, &c.* 1 *Denio*, 595. *Mills* v. *Brooklyn*, 32 *N. Y. Rep.*

Herrington *v.* Village of Corning.

498, *and other cases above cited.*) And in all cases of duty to the public, except in case of corporations existing and acting under a charter imposing an imperative duty, there is no liability to an individual for injuries occasioned by omission to perform such duty. (*Garlinghouse* v. *Jacobs*, 29 *N. Y. Rep.* 297, *overruling Adsit* v. *Brady*, 4 *Hill*, 630.) The liability therefore depends upon the statute. An authority created by the action of the defendants, even though it be a duty, falls within the principle of the case last cited.

IV. It will be seen that there is a distinction observed by the statute, between the duties and powers of the defendants in respect to streets and crosswalks on the one hand and sidewalks on the other. In respect to the former, the powers of the defendants are ample, and they are charged, primarily, with the duty of taking care of them, while the authority respecting sidewalks is both limited and secondary. And any individual injury occasioned by mere omission to exercise the latter authority must be *damnum absque injuria.*

*By the Court,* JAMES C. SMITH, J. The defendants are a municipal corporation created under the general act for the incorporation of villages, passed in 1847. (*Laws of 1847, p. 533, ch. 426.*) The plaintiff sues for personal injuries sustained, as he alleges, in consequence of an omission of duty on the part of the defendants to keep in repair a certain sidewalk within its corporate limits. In order to recover, he must show that the alleged duty was absolute and imperative. To decide this point, it is necessary to examine such provisions of the statute under which the defendants were incorporated as relate to the powers of the corporation, or its agents, in respect to the constructing and repairing of sidewalks.

The corporation has a board of trustees, five in number. (§ 25.) The trustees are charged with certain absolute

duties specified in the act, but the duty of making or repairing sidewalks is not among them. (§ 57.) The only specific duty absolutely imposed upon the trustees in respect to sidewalks, is to direct the manner of making and repairing sidewalks and crosswalks, and when there are no street commissioners, to superintend making and repairing the same. (*Subd.* 22.)

There are also certain enumerated powers vested in the trustees, to be exercised by them in their discretion, (§ 58,) but the power in question is not among them.

On a further examination of the statute it will be seen that the trustees have no absolute power to cause sidewalks to be made or repaired, but that their authority respecting that subject is wholly dependent on the action of the electors of the village.

The act provides that the duly qualified voters of the village, at any meeting, may, by resolution, direct the trustees to cause sidewalks to be made or repaired on any public road therein, or on any part of such road therein, specified in the resolution. (§ 35.) The expense of making or repairing such sidewalk shall be a lien on the lot which it adjoins in front; and if the owner be a resident, the trustees shall give him notice of the manner in which such sidewalk is required by them to be made or repaired, and of the time, not less than sixty days, within which it may be so made or repaired by him at his own expense, under the superintendence of the trustees or of the street commissioners. (§ 46.) If the owner shall not make or repair such sidewalk, &c. or if he be not a resident of the village, the trustees shall cause the same to be made or repaired, and the expenses thereof shall be a tax against him and a lien upon the lot, and the trustees shall issue their warrant for the collection thereof. (§ 47.) If the warrant shall be returned uncollected, the trustees may lease the real estate on which the tax is assessed, or the expenses are a lien, for the purpose of raising the amount,

(§§ 50–54,) and by an act passed in 1864, they may sell such real estate for the like purpose. (*Laws of* 1864, *p.* 1295, *ch.* 559, §§ 1–8.)

But the duty of causing such sidewalk to be made or repaired in case of the neglect or non-residence of the owner, with which the trustees are charged by the provisions above referred to, is not fixed and absolute, nor does it become so, until the trustees are supplied with funds for the purpose. They have no power, within themselves, to raise such funds, and in that respect also they are wholly dependent on the action of the electors. It is expressly provided by the act that the village shall have no power to borrow money, nor shall it be liable to pay money borrowed on its account, or advanced in its behalf, by its officers or by any other person, (§ 43,) and no officer of the village shall have power to assent to incurring any debt or liability on the part of the village contrary to the provisions of the act. (§ 44.) But it is also provided that at any meeting of the electors to elect village officers, or at any other meeting duly notified, the qualified voters may, by resolution, direct the trustees to cause to be raised by a general tax upon the taxable property of the village, taxes for certain specified purposes, and no other, one of which is, "for the necessary advances for making and repairing sidewalks in cases where those required to make or repair them shall neglect or refuse to do so." (§ 28, *subd.* 7.)

Even the powers of the electors, in respect to the subjects above referred to, are expressly limited by the terms of the act. No resolution shall be adopted requiring the trustees to cause a sidewalk to be made or repaired, unless the notice of the meeting required by law to be given by the trustees shall specify that such a resolution will be proposed for adoption thereat. (§ 45.) And no tax shall be voted, unless the notice of the meeting shall specify the amount and objects of such tax, and the specific sum required or proposed to be raised for each object, and

shall state that such meeting will be called upon to vote in respect to raising the sum so specified. (§ 29, *see also* §§ 30, 31.)

Thus it appears from these several provisions of the act, that the corporation has no power to cause sidewalks to be made or constructed, except in the mode, and by means of the agencies therein provided; that the trustees have no authority to construct or repair sidewalks until the electors by resolution, duly adopted, direct them to cause the work to be done, and also direct them to cause money to be raised by tax for the necessary advances for such work; that the powers of the electors over the subject are limited, and that within the limits prescribed, their powers are wholly discretionary.

Until the electors have directed the work to be done and the money to be raised, and the money has been raised, there is no fixed and absolute duty on the part of the trustees to cause the work to be done.

In short, it is not the intent of the general statute referred to, authorizing the incorporation of villages, to confer upon the corporations formed under it, or upon their officers, an absolute power to make or cause to be made and kept in repair sidewalks along their streets, thus involving taxation to an unknown extent, but the subject is referred to the discretion of the electors in their collective capacity, who by their action may impose upon the trustees the duty of causing any particular sidewalk to be made or repaired. This policy of the statute is obviously intended to protect the rights of individual lot owners against an undue wielding of corporate or official power, and it should be carefully observed. If in consequence of its operation useful repairs or constructions are sometimes delayed or prevented, whereby an individual sustains peculiar damage, he suffers no legal injury, and the law gives him no remedy.

This view of the statute, and of the powers and duties

Herrington *v.* Village of Corning.

resulting from it, distinguishes the present case from that of *Conrad* v. *The Trustees of the Village of Ithaca*, (16 *N. Y. Rep.* 158,) and others of a like nature to which we are referred by the plaintiff's counsel. Those cases rest upon the principle that the grant by the government to a municipality, of a portion of its sovereign power, is to be deemed a sufficient consideration for an implied contract on the part of the corporation to perform the duties which the charter imposes, and the contract made with the sovereign power enures to the benefit of every individual interested in its performance. · The peculiar provisions of the . statute, already referred to, prescribing the only means by which the corporate power to make or repair sidewalks can be exercised, and limiting the authority of the trustees and of the electors themselves, on that subject, leave no room to imply a contract by the corporation to make sidewalks or keep them in repair, otherwise than as the statute provides.

If the views above expressed are correct, the plaintiff's action cannot be supported. The injury complained of resulted from the decayed condition of a sidewalk, which the defendants caused to be constructed several years before the injury, in front of a lot owned by a non-resident. It does not appear, that prior to the injury any resolution had been adopted at a meeting of the electors, directing the trustees to cause that particular sidewalk to be repaired, or providing that money be raised by tax for the necessary advances therefor.

The plaintiff proved that a resolution was adopted by the electors of the village, on the 2d March, 1858, authorizing the trustees to cause sidewalks to be built and kept in repair by the owners of lots, "on each and every street of the village, when, in their judgment, the good and welfare of the inhabitants shall require it, without any further vote of the people." This resolution does not

aid the plaintiff's case.   In the first place, it is, to say the least, of questionable authority, as it does not specify any sidewalk to be constructed or repaired.   Section 45 of the general act requires that every resolution of the electors, directing the trustees to cause sidewalks to be made or repaired on any public road, or any part of such road, shall specify such road or part of road.   But, in the next place, if the resolution is valid, it is not mandatory in respect to any particular sidewalk, but confers a general and purely discretionary power as to what walks, if any, shall be made or repaired, and as to the time when the work shall be done.

The plaintiff's counsel refers to certain provisions of chapter 559 of the laws of 1865, amending the general statute, but they do not affect this case.   Section 18 of that act, which gives the trustees power to raise, by tax, funds for certain purposes therein mentioned, including advances required for sidewalks, expressly directs, that said "funds shall be raised in the same manner in which other taxes are raised in said village."   This seems to require the preliminary resolution of the electors, provided for by the general act.   But, however that may be, (a point which it is unnecessary to decide,) the section, so far as it relates to a fund for sidewalks, refers to such sidewalks only as are directed to be made or repaired, pursuant to the provisions of section 15 of the same act, to wit, after a vote by ballot, for the purpose, by a majority of the taxable voters of the village who shall own real estate therein, (provided such vote shall represent two thirds of the real estate of said village, held by resident owners.)   There is no evidence of such a vote in the present case.

The act of 1847 provides that it shall be the duty of the trustees to carry into effect every resolution adopted at any meeting of the electors of such village, legally con-

Herrington *v.* Village of Corning.

vened, which such meeting shall have authority to adopt. (§ 57, *subd.* 10.)   In view of this provision, I see no reason to doubt that if the electors had, by resolution duly adopted, directed the trustees to repair the sidewalk in question, and directed, also, the raising of funds for that purpose by tax, and such funds had been raised, the duty of the trustees to repair would have become absolute and fixed, and, for their neglect of such duty, the corporation would have been liable to an individual sustaining peculiar damage thereby.   (17 *John.* 451.   29 *N. Y. Rep.* 297. 34 *id.* 389.)   But, as we have seen, that is not the case before us.

The plaintiff's counsel argues that the defendants are liable, on the ground that, having constructed the sidewalk originally, they are bound to keep it in repair.   But the argument overlooks entirely the provisions of the statute already adverted to, which relate to repairs as well as to original constructions.   There is no imperative obligation to repair without funds for that purpose.   In the case of *Peck* v. *Batavia*, (32 *Barb.* 634,) the injury resulted from the fact that a sidewalk, originally constructed by the village corporation, was out of repair, yet it was held that the corporation was not liable.

The defendants are entitled to judgment on the nonsuit ordered.

Judgment for the defendants.

[MONROE GENERAL TERM, March 2, 1868.   *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]