McSHERRY *v.* TRUSTEES OF THE VILLAGE OF CANANDAIGUA.

*(Supreme Court, General Term, Fifth Department.*  January 24, 1891.)

1. VILLAGES—POWERS OF TRUSTEES—DEFECTIVE STREETS—LIABILITY.
   Under Laws N. Y. 1854, c. 352, providing that the trustees of the village of Canandaigua shall be commissioners of highway for the village, with powers to regulate, repair, etc., the streets and walks, it is the duty of the trustees to repair the sidewalks, and the village is liable for injuries occasioned by their failing to do so.

2. SAME—NOTICE—STREET COMMISSIONERS.
   Notice of the defect to one acting as street commissioner and admitted to be such by the village, whose duty it was "to examine the streets and sidewalks," is sufficient to charge the village, notwithstanding neither the charter nor the by-laws of the village provide for the appointment of such officer.

Action by John B. McSherry against the trustees of the village of Canandaigua for personal injuries.  Judgment for plaintiff on a verdict at circuit in Ontario county, from which and from an order denying a motion for a new trial defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Edwin Hicks,* for appellants.  *Clement & Colmey, (Frank Rice,* of counsel,) for respondent.

DWIGHT, P. J.  The action was for alleged negligence on the part of the defendants in suffering a dangerous defect to exist in one of the sidewalks of the village of Canandaigua, in consequence of which the plaintiff sustained

injuries. The defect consisted of a loosened grate on the level of the flagging, which gave way under the plaintiff's feet as he stepped upon it in passing. The exception chiefly argued was that taken by the defendants to the denial of their motion for a nonsuit, which was based upon the grounds (1) that the charter of the village imposed upon its trustees no obligation to construct or repair sidewalks; (2) that the trustees had no notice of the defect complained of; and (3) that the injury was caused by the negligence of the plaintiff. The village was originally incorporated in 1815 by a special act of the legislature, being chapter 254 of the Laws of that year, which contained no provision in respect to the construction, maintenance, or repair of streets or sidewalks, except one empowering the trustees to make and publish "prudential by-laws, rules, and regulations * * * relative [among other subjects] to the streets, alleys, and highways within said village, and draining, filling up, paving, keeping in order, and improving the same." The charter remained unchanged in this respect until the passage of chapter 420 of the Laws of 1847. That act constituted the village of Canandaigua a separate road-district; exempted it from the jurisdiction of the commissioners and overseers of highways of the town of Canandaigua, except in respect to laying out, altering, and discontinuing roads therein; provided that its trustees should, within its limits, possess the powers and perform the duties of commissioners and overseers of highways, except in the respect above mentioned, and only "so far as such powers and duties are consistent with the provisions of this act;" and it very narrowly restricted those powers and duties by prescribing the manner of raising and expending moneys of the village for highway purposes. In the same year the legislature enacted the first general law for the incorporation of villages, (Laws 1847, c. 426,) and by its final sections provided for the adoption of any of its provisions by action of the electors of any village already incorporated, and the application, thereafter, of such provisions to such village. Accordingly, in June, 1848, the electors of Canandaigua duly adopted certain sections of the act of 1847, which thereupon became parts of its charter, and all provisions of previous statutes inconsistent therewith became nugatory in respect to that village. Id. § 92. The sections thus adopted embraced all the essential provisions of the Acts of 1847 in respects to streets and sidewalks, including that cited and commented upon by the court in the case of *Herrington* v. *Village of Corning,* 51 Barb. 396, decided by the former general term of this court in the seventh district in 1868. Among those provisions was one which limited the trustees in the exercise of the powers and duties of commissioners of highways in the same manner as they were limited by the provisions of chapter 420 above quoted. It was upon these particular and peculiar provisions of the general act of 1847 that the court distinguished the case of *Herrington* v. *Village of Corning* from that of *Conrad* v. *Ithaca,* 16 N. Y. 168, and the large class of cases of a like nature, and upon which the village of Corning was held not liable in a case like the present. But there was further special legislation on this subject in respect to the village of Canandaigua subsequent to the act of 1847, and prior to the occurrence which gave rise to this action. We refer especially to chapter 352 of the Laws of 1854. The first section of that act was in the following terms: "The trustees of the village of Canandaigua shall be commissioners of highways in and for said village, and shall have all the powers of commissioners of highways, and as such they shall also have power to regulate, repair, improve, and clean the streets, highways, alleys, lanes, public squares, bridges, sidewalks, cross-walks, drains, and sewers in said village, and to prevent the incumbering of the same in any manner, and to protect the same from encroachment and injury." This legislation we regard as having an important bearing upon the main question involved in this case. Here was no longer the narrow restriction placed upon the powers of the trustees as commissioners of highways, which marked the general act of 1847,

(chapter 420,) nor those contained in the sections of the general act of that year, (chapter 426,) which became ingrafted upon the charter of the village. On the contrary, the act of 1854 created the trustees absolutely commissioners of highways, and gave to them all the powers of such commissioners, and, by specification, the power as such to repair the sidewalks of said village. This, we think, brought the case of Canandaigua within the doctrine of the case of *Conrad* v. *Ithaca,* and the numerous decisions which have followed it.   The decision in the *Conrad Case* was put expressly upon the ground that the trustees were commissioners of highways, and therefore the corporation was liable for their negligence; and such has been the test of the liability of the trustees of villages ever since, and has been applied in a late case to the trustees of the village of Canandaigua itself, (*Colburn* v. *Village of Canandaigua,* 15 N. Y. St. Rep. 668,) in which case BRADLEY, J., mentions as the only basis of the judgment that "by the charter the trustees are commissioners of highways, and are given the power to prohibit incumbering the sidewalks," etc., evidently referring to section 1 of the act last cited.   We have not overlooked the provision of section 3 of the same act, which continued to the trustees the "power to give notice as now provided by law for taxes to be raised to cause cross-walks, sidewalks," etc., "to be constructed  *  *  * or repaired in such village;" but we are not disposed to regard this provision as reimposing upon the trustees the limitations and restrictions in this respect, contained in the previous statutes referred to.   If such were the intention of the statute, what was the purpose of its enactment?   If the trustees were to be in no larger sense commissioners of highways, nor to have any further power as such than under the two acts of 1847, what was the purpose or propriety of the legislation of 1854.   We think that by the latter act the village of Canandaigua was brought within the rule of liability established by the cases above referred to.

Upon the question of notice of the existence of the defect complained of, we find evidence which seems to be sufficient to charge the defendant.   The evidence is substantially uncontradicted that the attention of one Homer Chase, who was known as street commissioner of the village, was called to the unsafe grate more than once some weeks before the accident.   Neither the charter, nor, so far as appears, any by-law, of the village directly provides for the appointment of such an officer, although the general act of 1847 recognizes the probable existence of such, (section 57, subd. 22;) and several ordinances of the village, in evidence, recognize his actual existence, and prescribe certain duties for his performance.   Homer Chase describes himself in his testimony as having been for nearly two years under the employ of the trustees of the village "to superintend streets;" and testifies that his business in part is "to examine streets and sidewalks."   Moreover, we find in the record the formal admission by the defendant "that Homer Chase was the street commissioner of the village of Canandaigua at the time of the accident to the plaintiff, and had been since January 1, 1888."   All of which must establish the fact that the person named was in fact, if not by investiture of office, the street commissioner of the village, recognized as such by the trustees, and charged with the duty, among others, of examining streets and sidewalks; not, we must assume, for his personal satisfaction, but for the information of the trustees.   Such being the case, notice to him was unquestionably notice to the defendant.   *Childs* v. *Village of West Troy,* 23 Hun, 68; *Deyoe* v. *Saratoga Springs,* 3 Thomp. & C. 504; *Rehberg* v. *City of New York,* 91 N. Y. 137.

We think the question of the plaintiff's contributory negligence was properly submitted to the jury, and that no other exception in the case was necessarily fatal to the verdict.   The judgment and order appealed from must be affirmed.   All concur.