## Case No. 4,511.

### ERICSSON v. MANCHESTER.

[3 Hughes, 191.] [1]

Circuit Court, E. D. Virginia. April 10, 1879. [2]

C. P. Meredith and S. Macon, for plaintiff. J. S. McRae and T. M. Logan, for defendant.

HUGHES, District Judge. This is an action on the case for damages, the declaration charging with the usual amplitude of allegation, among other things, that the street on which the accident occurred was a public highway of the city, that it was at the time, and had been for some time before, in unsafe condition, for the want of a proper railing or wall to protect persons passing over the arch from accident, and that the defendant had notice of its bad and defective condition, and wilfully neglected to make it safe. (The case was tried at the February term of the court, when a verdict was rendered for the plaintiff in which his damages were assessed at $5,500.) At the trial the defendant insisted generally that a city is not liable to individuals injured for the bad condition of its streets. It insisted, moreover, that this causeway was not a public street of the city, and for that reason that the city was not liable for the accident. It insisted further that the causeway was the property of the James River Bridge Company; that it was under the bridge company's control, and not under the control of the city, and that for that reason the city was not liable.

Elaborate argument, based upon very numerous authorities, was made at the trial by counsel on either side, on prayers for instructions to the jury. The court was obliged to rule upon them off-hand, and in doing so invited in advance a motion for a new trial, in order to a more deliberate argument of the

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]
[2] [Reversed in 105 U. S. 347.]

law of the case, in the event of a verdict for the plaintiff, giving to the jury the following instructions:

"There are three questions for the jury, viz.: (1) Whether a proper guard or protection had been provided at the point where the accident occurred. If there was not, (2) whether the accident was in consequence of the absence of such proper guard or protection; and (3) if so, whether damage ensued to the plaintiff, and what amount of money shall be allowed as the measure of the damage to him. If the jury believe from the evidence that a proper guard or protection to the highway was not provided, that the accident occurred in consequence, and that damage ensued to the plaintiff from the accident, then the court instructs the jury that the city of Manchester is liable for the damages, unless it proves that the plaintiff sustained his injury through his own neglect or want of care. The jury are also instructed that in considering damages in this case they may take into account any permanent future suffering and disability resulting to the plaintiff from the accident."

A motion for a new trial was duly made by the defendant and the questions of law very fully reargued. The motion was, of course, based upon the ground that the court misruled at the trial on the law of the case.

I am now to revise the ruling of the court at the trial of this case, made in the instructions given to the jury. There are three questions in the case, viz.: 1. Whether the causeway was a highway or public street of Manchester. If so, (2) whether Manchester as a municipal corporation is liable to an individual for damages resulting to him from the defective or bad condition of its streets; and, if so, (3) whether the relations of the James River Bridge Company to this particular causeway relieved Manchester from responsibility for its defective or bad condition.

1. As to the first point, I think the causeway was in every sense a public highway; and, lying wholly within the corporate limits of Manchester as it did, I think it was a public street of the city, subject to its control and authority in every way in which any other street of the city is so subject. For the purpose of building the bridge and causeway, which was a joint enterprise of the two contiguous cities, it was found convenient to make use of the instrumentality of a joint stock company; but the adoption of this method of action was not intended to, and did not, convert what was in its nature a public highway, connecting two cities, into the private property of a private company. If the two cities had designed by such an expedient to avoid the liability of keeping a public highway in safe condition, I cannot suppose that an act of incorporation for the joint stock company would ever have been given them by the legislature. This causeway is the only free highway connecting the two cities. It is essentially and necessarily a public highway, and being in the corporate limits of Manchester, is in its essential character a public street of that city.

Stress was laid by counsel for defendant upon that section of the charter of the city of Manchester which provides that any street which shall have been open and used by the public as a street for five years shall become a public street and be subject to the control of the council. This section has no other effect than to render the mere fact of a street being open to the use of the public for five years, ipso facto, a subjection of it to the control and power of the city. The object of the provision was to get rid of the refined learning of the law-books on the question what constitutes the dedication of a street to the public in cases where doubt exists. The numerous decisions on that subject cited at bar have no application to cases where there is no doubt about a street being used, and intended to be used, by the public, as in the case before us. Here was a street necessarily public in its very nature. No formal adoption of the bridge by Richmond, or of the causeway by Manchester, was necessary to constitute them a public highway. They were constructed by public bodies, with public funds, for public use, as a public highway, and were thrown open to the public for free use at the start. A formal adoption of them as a public street would, therefore, have been an idle ceremony. The use of them for five years by the public was not necessary to clear up any doubt as to their public character, and thereby to establish upon them the control and authority of the respective municipalities. I could not so falsify an evident and indisputable fact as to refuse to hold that the causeway in question is a public street of Manchester, as such subject to its control, and as to which Manchester is liable to such duties and responsibilities as the law imposes upon municipal corporations.

2. The next question is, whether Manchester as a municipal corporation is liable for the defective or bad condition of its streets, to individuals sustaining actual injury therefrom. Only a few weeks ago the supreme court of appeals of Virginia, in the case of Noble v. City of Richmond, 31 Grat. 271, passed upon this question, and decided that: "A municipal corporation which, by its charter, has the power to lay out, improve, light, and keep its streets in order, is liable in damages at the suit of an individual who sustained injuries by reason of the neglect of said corporation to keep its streets in a proper and safe condition; and that such person may recover damages for such injuries in an action in which he alleges and proves that the corporation had notice of defects or want of repairs in its streets (which notice may be implied), and that he was injured in consequence of such defects in a street." The decision was rendered in a case in which the

plaintiff's wife had fallen into a hole in the sidewalk of a street of Richmond at night, the hole having been left uncovered and no light placed near by. This was the first case in which that court had had occasion to deal directly and particularly with this important question of law, and it made this decision after a full review of all the authorities bearing on the subject, citing, among others: City of Richmond v. Long's Adm'rs, 17 Grat. 375; Sawyer v. Corse, Id. 230; the English cases of Henly v. Mayor, etc., 5 Bing. 91, and Russell v. Men of Devon, 2 Term R. 667; Weet v. Trustees of Brockport, 16 N. Y. 163; Judge Cooley's opinion in City of Detroit v. Blackeby, 21 Mich. 84; Weightman v. Washington, 1 Black [66 U. S.] 39; and Barnes v. District of Columbia, 91 U. S. 540. The case of a municipal corporation existing by authority of a charter obtained by its solicitation, clothed by charter with powers of taxation and administration, and charged with correlative duties and responsibilities, was distinguished by the court from that of a quasi corporation, like a county or township, exercising no statutory authority, and having no power except the limited, ordinary powers incident to counties and towns under the common law. The supreme court of the United States had previously announced this principle in the case of Weightman v. Washington, 1 Black [66 U. S.] 39, upon a wider review and a much fuller citation of authorities, citing the leading English cases; also Erie City v. Schwingle, 22 Pa. St. 384; Storrs v. Utica, 17 N. Y. 104; Conrad v. Trustees of Ithaca, 16 N. Y. 159; Browning v. Springfield, 17 Ill. 143; Hutson v. New York, 5 Sandf. Ch. 289; Lloyd v. Mayor and City of New York, 1 Seld. [5 N. Y.] 369; Wilson v. New York, 1 Denio, 595, 2 Denio, 450; Rochester White Lead Co. v. Rochester, 3 N. Y. 463, 763; Smoot v. Mayor, etc., of Wetumpka, 24 Ala. 112; Hickok v. Plattsburgh, 15 Barb. 427; Mayor, etc., of New York v. Furze, 3 Hill, 612, and other cases. This decision was rendered in a case where the plaintiff had been injured by the falling in of a defectively constructed bridge constructed by agents of the city. The court held, that where the charter of a municipal corporation gives it the control and management of a bridge, makes it chargeable with the expense of keeping it in repair, and gives it power to provide the means of doing so, then such corporation is liable to the public for the safe condition of the bridge, and to individuals for injuries resulting from its neglect to keep it in repair; and this even though only one end of the bridge is within its limits. Thus the courts of last resort both of Virginia and of the United States, to say nothing of other courts, have settled the principle of the liability of a municipal corporation in damages for injuries received by an individual, resulting from defects in or the bad condition of its streets, and therefore it is useless for me to refer to the multitude of decisions in England and America in which this subject has been discussed. I cannot say that the precedents in England have been consistent. They settle, beyond question, the principle, that a parish, which is but a mere ecclesiastical precinct, is responsible for damages resulting from the bad condition of its roads; and they settle the opposite principle with equal decisiveness, that such quasi corporations as hundreds and counties are not so responsible. These diverse rulings result no doubt from antiquarian reasons that have no application in this country. But the English precedents also establish the principle that municipal corporations, having by charter the extraordinary powers of taxation and control over streets usually given to chartered cities, are responsible to individuals injured for defects in their streets; and this latter proposition may be considered to be settled law, both in England and America. True, there is the case of City of Detroit v. Blackeby, 21 Mich. 84, in which the contrary of this latter doctrine is held; but this case is anomalous, and is overborne by the great mass of contrary authorities on this continent. At all events this court is bound by the ruling of the supreme court of the United States in Weightman v. Washington, already cited, and of the Virginia court of appeals in Noble v. City of Richmond, supra. These decisions leave me no alternative but to hold that the city of Manchester is liable to individuals for damages resulting from injuries caused by the defective condition of its streets.

3. The only question remaining for consideration, therefore, is, whether the fact of the particular causeway in question having been constructed by and being the property of the James River Bridge Company, relieves Manchester from the liability imposed upon her by law for the safe condition of her streets. This is the difficult question of the case; difficult because I know of no precedent which has presented the precise facts which constitute the distinguishing features of this case. The point was much relied upon by counsel for the defence, that the mere fact of the James River Bridge Company being liable to the plaintiff (as it certainly is) established the non-liability of the city of Manchester. But it is a non-sequitur to insist that such a liability does exonerate the city. If, for illustration, we suppose the case of a turnpike company's road running along and constituting a street of a city, I would see no difficulty in holding the company responsible for its defects as a road, while holding the city at the same time responsible for its defects as a street. There are many cases of dual liability known to the law. In such a case as that of the turnpike supposed, I should think it clear that there was a dual liability, and that an individual receiving injury from defects in the road or street might elect whether to proceed for damages against the city

or against the private company. I conceive that the existence of a right in an injured person to proceed against the company could not of itself negative his right otherwise belonging to him to proceed against the city. Nor could the responsibility of the city to an individual sustaining injury from the defective street in any way affect the responsibility of the company to the city for negligence in respect to its road. The principle of a city's liability for defective streets, notwithstanding the fact that they were under the control and authority of an intervening agency, itself independent of the city, has been established by very authoritative decisions. One of these is the case of Bailey v. Mayor, etc., of New York, 3 Hill, 531, 2 Denio, 433. The Croton aqueduct and waterworks were constructed for the city of New York under the control and direction of five commissioners appointed by the governor of the state, who were not responsible to the city. One part of their work, a dam forty miles from the city, had been defectively constructed, and had given way, causing great damage to the property of the plaintiff. He sued the city, and under the ruling of the court recovered a verdict and judgment for a large amount. The case was carried to the supreme court of the state, and that court, Judge Nelson (afterwards justice of the supreme court of the United States) delivering the opinion, affirmed the ruling of the court below. It was then carried to the court of errors and appeals (the senate) of the state, where the decision was affirmed, Chancellor Walworth, among others, delivering an affirming opinion. This was a very strong case for the city. The fault was committed by a board which it did not appoint and could in no manner control. The defective work was forty miles beyond its border and its control. Yet on the principle that she and her citizens were to be the chief beneficiaries of the work she was held liable. This New York decision is the more important to us, because it has been made the basis of a decision upon the same point by the supreme court of the United States in the case of Barnes v. District of Columbia, 91 U. S. 540. That was an action brought by an individual against the District of Columbia, to recover damages for an injury resulting from a fall into a pit made by workmen in grading a street. The liability of the District was denied on the ground that a body of five men, called the "Board of Public Works," appointed by the president of the United States, were invested by act of congress with the entire control of the streets and alleys of the District, and their regulation and repair; that this board (and not the District) was responsible to the public and to individuals for the condition of the streets; that over this board the District had no control; and that the District was consequently relieved from the duties and responsibilities in respect to its streets, which might otherwise

have attached to it as a chartered municipal corporation. But the court discarded this reasoning and held the District liable. In its opinion, after citing very many cases, in speaking of the case of Bailey v. Mayor, etc., of New York, the court said: "The learned judge (Nelson) repudiates the argument arising from the fact that the commissioners were appointed by the state; that the defendants had no control over their actions; that they were bound to employ them, and to submit to the independent exercise of their control. He held that the commissioners were the agents of the city, and that the latter was responsible for their negligent conduct. * * * This case is nearer the one we are considering than any other reported in the books. The struggle in the New York courts was between the dictates of that evident justice and good sense which required that the city should indemnify a sufferer for the loss arising from the acts of those doing a work under its authority and for its benefit, and the technical rule which exempted it from liability for acts of officers not under its control or appointed by it." The only difference between the two cases which have been described and the one at bar is, that in them the board or the commission represented a single city, whereas here the bridge company represents two corporations, that is to say, Richmond and Manchester jointly. This, however, does not affect the principle established by the two cases, that the liability of a municipal corporation for the condition of its streets is not relieved or removed by the interposition of a subordinate corporation ancillary to the principal one, and charged with the direct possession and control of its streets, or of a particular street.

I think the cases of Bailey v. Mayor of New York, and of Barnes v. District of Columbia, furnish the law to the case at bar, and establish the liability of Manchester in this suit for the defective condition of the Seventh street causeway, where the fearful accident which is the subject of this suit befell the plaintiff. As I cannot change the ruling which I made in the instructions given to the jury at the trial, I must overrule this motion for a new trial.